[No. B147984. Second Dist., Div. Three. Apr. 30, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTONIO DURAN et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.B., C., and D.

1450

**COUNSEL**

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant Antonio Duran.

Michele A. Douglass, under appointment by the Court of Appeal, for Defendant and Appellant Jesus Fonseca.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lance E. Winters and Michelle J. Pirozzi, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ALDRICH, J.—**

I

INTRODUCTION

After a jury trial, defendants and appellants Antonio Duran and Jesus Fonseca were each convicted of two counts of robbery. Duran was also convicted of evading a police officer. The jury found firearm and street gang enhancements true, and the trial court sentenced Duran and Fonseca to prison terms of 23 years and 33 years, 4 months, respectively.

In the published portion of this opinion, we consider and reject appellants' contentions that the evidence was insufficient to prove the robberies were undertaken for the benefit of, at the direction of, or in association with a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)).[1] We hold that a certified minute order documenting a third gang member's conviction for a predicate offense was not inadmissible hearsay. The minute order, coupled with a gang expert's testimony, was sufficient to establish one predicate offense. We also conclude that the People presented sufficient evidence to prove that the gang's primary activities were statutorily enumerated criminal offenses within the meaning of section 186.22, subdivision (f).

In the unpublished portion of the opinion, we address Fonseca's contention that the trial court erred by imposing a sentence enhancement pursuant to section 12022.53, subdivision (b) on count 2,[2] because this enhancement had previously been stricken. We also consider Duran's contentions that the evidence was insufficient to prove he was an aider and abettor in one of the robberies, and insufficient to support the firearm enhancement alleged against him. The People contend the abstract of judgment must be corrected to accurately reflect the sentence imposed on Fonseca. We correct the abstract of judgment as requested by the People. In all other respects, we affirm.

---

[1]Hereinafter, all statutory references shall be to the Penal Code, unless otherwise stated.

[2]The counts charged in the information were renumbered during the proceedings. Except where otherwise indicated, we refer herein to the counts as renumbered.

## II

### FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts.*

1. *Robbery of Benjamin Beckum.*

On December 1, 1999, Benjamin Beckum was standing outside a flower shop where he was employed. Duran and Fonseca drove past in a gold Nissan; Fonseca was driving. Beckum made eye contact with both appellants. Appellants gave Beckum a "weird look." The Nissan turned and pulled behind the flower shop, and Beckum lost sight of it.

Approximately five minutes later, Beckum saw Fonseca at a pay telephone outside the flower shop. Fonseca indicated he was having difficulty with the telephone and asked whether Beckum had a calling card. Beckum said he did not, and approached to examine the telephone. Fonseca hung up and asked, "Do you see those chains right there," referring to two gold chains Beckum was wearing. Beckum looked down at the chains. When he looked up again, Fonseca was displaying a black, pearl-handled revolver. Beckum observed the gold Nissan stopped in the middle of the street, approximately 300 feet away. After grabbing the chains from Beckum's neck, Fonseca ran to and entered the gold Nissan. Duran, who was driving, "took off." Beckum later identified both Duran and Fonseca from a photographic lineup and at trial.

2. *Robbery of Julio R. and Duran's evasion of police officers.*

On December 3, 1999, appellants robbed 16-year-old Julio R. as he walked home from school. Appellants were passengers in a car that pulled up alongside Julio R. Fonseca approached Julio R. with a baseball bat and asked, "[W]here are you from?" Julio R. understood this as a request to identify his gang affiliation. Julio R. replied, "Nowhere," meaning he was not a gang member. Fonseca motioned at Julio R. with the bat. Duran pointed a gun at Julio R. during the robbery, forcing him to surrender his watch. Julio R. testified that Fonseca had "F13" tattooed at the corner of his eye.

On December 6, 1999, Duran, driving the gold Nissan, led Los Angeles police officers on a brief high-speed chase that ended when Duran crashed into a van. Fonseca had exited the car and fled from officers at the outset of the chase. Officers found a handgun lying on the ground outside the car at the crash scene.

### 3. *Evidence relating to the criminal street gang enhancement.*

Officer Steve Burciaga, a 10½-year veteran of the Los Angeles Police Department who was assigned to an antigang unit, testified as an expert on gangs in the Los Angeles area. Burciaga's duties included gathering gang intelligence and documenting information on gang members. Burciaga had interviewed hundreds of gang members, including over 100 members of the Florencia 13 gang, in the Los Angeles area. He had also arrested gang members associated with narcotics activity, investigated gang-related homicides, and had worked as a gang detective investigating gang-related crimes. According to Burciaga, the Florencia 13 was a large, well-established Hispanic gang with over 200 members; it claimed as its territory the area around Harvard Park, among other areas. The Florencia 13 was identified with distinctive hand symbols and graffiti.

Burciaga opined that the Florencia 13 gang had "several" primary activities; the "main one" was "putting fear into the community" by committing robberies, assaults with deadly weapons, and narcotics sales. Community intimidation serves a gang's interests by causing witnesses to refuse to testify against gang members. Robberies serve a gang's interests because the robbery proceeds are often distributed among the gang's members. The perpetrators of a robbery gain stature in the gang by showing their willingness to commit crimes for the gang. Narcotics sales benefit a gang by providing a source of income for gang members.

Burciaga had spoken with Duran and Fonseca on numerous occasions. Both had admitted to membership in the Florencia 13 gang. Burciaga explained that the Florencia 13 used "F13" as a symbol identifying the gang. Tattoos represented a commitment to one's gang, and an "F13" on the face was an outward statement claiming Florencia 13 gang membership. Burciaga testified that appellants both had tattoos related to gang membership.

When given a hypothetical based upon the facts of the case, Burciaga opined that the robberies were committed for the benefit of the Florencia 13 gang. Such robberies would benefit the gang by providing financial support, controlling the gang's territory, and generally intimidating local residents.

Burciaga had personally spoken with Octavio Aldaco and had reviewed Aldaco's "rap sheet" and other records. Aldaco was a Florencia 13 gang member and had been a member in 1997. Burciaga's opinion was based upon his personal experiences and dealings with Aldaco, his discussions with other officers who had had contacts with Aldaco, and Aldaco's personal admissions to Burciaga that he was a Florencia 13 member. A certified court

minute order dated May 18, 1998, documented that Aldaco had pleaded guilty and had been convicted of felony possession of cocaine base for sale (Health & Saf. Code, § 11351.5) in case No. BA164005 on that date. Over appellants' hearsay objections, the People introduced the minute order into evidence. Burciaga believed, based upon his contacts with Aldaco, his experience, and his review of the minute order, that the Octavio Aldaco referenced therein was the same Octavio Aldaco he knew to be a Florencia 13 gang member.

## B. *Procedure.*

Trial was by jury. Appellants were convicted of the second degree robberies of Beckum and Julio R. (§ 211). The jury found true allegations that the robberies were committed on behalf of a criminal street gang (§ 186.22, subd. (b)(1)); that a principal personally used a firearm (§ 12022, subd. (a)(1)); that Duran personally used a firearm in the robbery of Julio R. (§§ 12022.53, subd. (b), 12022.5, subd. (a)(1)); and that Fonseca personally used a firearm during commission of the robberies (§§ 12022.5, subd. (a)(1), 12022.53, subd. (b)).[3] The jury further found Duran guilty of evading a police officer with willful disregard (Veh. Code, § 2800.2, subd. (a)). The trial court found true an allegation that Fonseca had suffered a conviction for robbery, a serious or violent felony within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12) and section 667, subdivision (a)(1). It sentenced Fonseca to a term of 33 years, 4 months in prison pursuant to the Three Strikes law, and Duran to a total term of 23 years in prison. It also imposed various fines.

## III

## DISCUSSION

### A. *Sufficiency of the evidence to prove the gang enhancements.*

Appellants contend the evidence was insufficient to support the true findings on the gang enhancements, because the People failed to prove that (1) the Florencia 13 gang engaged in a pattern of criminal activity; and (2) one of the gang's primary activities was a statutorily enumerated criminal offense. We conclude the evidence adduced at trial was sufficient to prove both challenged elements of the gang enhancement.

### 1. *Standard of review.*

 When determining whether the evidence was sufficient to sustain a criminal conviction, we review the entire record in the light most favorable

---

[3] The trial court later struck the true finding on the allegation that Fonseca had personally used a firearm during the Julio R. robbery.

to the judgment to determine " 'whether it discloses substantial evidence— that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496 [117 Cal.Rptr.2d 45, 40 P.3d 754]; *People v. Holt* (1997) 15 Cal.4th 619, 667 [63 Cal.Rptr.2d 782, 937 P.2d 213].) "We draw all reasonable inferences in support of the judgment. [Citation.]" (*People v. Wader* (1993) 5 Cal.4th 610, 640 [20 Cal.Rptr.2d 788, 854 P.2d 80]; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382 [37 Cal.Rptr.2d 596].) Reversal is not warranted unless it appears " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

### 2. The evidence was sufficient to prove the robbery of Beckum was committed on behalf of a criminal street gang.

Section 186.22, subdivision (b)(1) imposes additional punishment when a defendant commits a felony for the benefit of, at the direction of, or in association with a criminal street gang. To establish that a group is a criminal street gang within the meaning of the statute, the People must prove: (1) the group is an ongoing association of three or more persons sharing a common name, identifying sign, or symbol; (2) one of the group's primary activities is the commission of one or more statutorily enumerated criminal offenses; and (3) the group's members must engage in, or have engaged in, a pattern of criminal gang activity. (§ 186.22, subd. (f); *People v. Sengpadychith* (2001) 26 Cal.4th 316, 319-320 [109 Cal.Rptr.2d 851, 27 P.3d 739]; *People v. Gardeley* (1996) 14 Cal.4th 605, 616-617 [59 Cal.Rptr.2d 356, 927 P.2d 713]; *People v. Loeun* (1997) 17 Cal.4th 1, 8 [69 Cal.Rptr.2d 776, 947 P.2d 1313].)

A "pattern of criminal gang activity" is defined as gang members' individual or collective "commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more" enumerated "predicate offenses" during a statutorily defined time period. (§ 186.22, subd. (e); *People v. Gardeley, supra,* 14 Cal.4th at p. 617.) The predicate offenses must have been committed on separate occasions, or by two or more persons. (§ 186.22, subd. (e); *People v. Loeun, supra,* 17 Cal.4th at pp. 9-10.) ▮ The charged crime may serve as a predicate offense (*People v. Gardeley, supra,* at p. 625; *People v. Olguin, supra,* 31 Cal.App.4th at p. 1383), as can "evidence of the offense with which the defendant is charged and proof of another offense committed on the same occasion by a fellow gang member." (*People v. Loeun, supra,* at p. 5.)

a. *The evidence was sufficient to prove a pattern of criminal gang activity.*

 Appellants assert that the evidence was insufficient to prove the required two predicate offenses. ██ ██ Appellants do not dispute that the charged offense, the robbery of Beckum, counted as one predicate offense.[4] (*People v. Gardeley, supra,* 14 Cal.4th at p. 625; *People v. Olguin, supra,* 31 Cal.App.4th at p. 1383.) However, they urge that the prosecution failed to prove a second predicate offense. They contend: (1) the Julio R. robbery could not be a predicate offense in regard to the gang enhancement charged on the Beckum robbery, because the Julio R. robbery occurred *after* the Beckum robbery; and (2) the certified minute order documenting the Aldaco conviction was inadmissible hearsay. Duran further argues that, even assuming the minute order was admissible, there was an insufficient showing that the Octavio Aldaco reflected in the minute order was the same Octavio Aldaco whom Burciaga knew to be a Florencia 13 gang member.

Contrary to the People's contention, appellants are correct that the Julio R. robbery could not be used as a predicate offense to prove the gang enhancement alleged in connection with the Beckum robbery. The Beckum robbery occurred on December 1, 1999; the Julio R. robbery occurred on December 3, 1999. Crimes occurring *after* the charged offense cannot serve as predicate offenses to prove a pattern of criminal gang activity. (*People v. Godinez* (1993) 17 Cal.App.4th 1363, 1365, 1368-1370 [22 Cal.Rptr.2d 164]; *People v. Olguin, supra,* 31 Cal.App.4th at p. 1383.)

However, the People adequately proved the second predicate offense through evidence of the Aldaco conviction. Burciaga's testimony, coupled with the minute order, was sufficient to prove Florencia 13 member Aldaco pleaded guilty to violation of Health and Safety Code section 11351.5, possession of cocaine base for sale, on May 18, 1998. This offense is one of the statutorily enumerated offenses (§ 186.22, subd. (e)(4)) and occurred within the specified time period.

---

[4]While both Duran and Fonseca were found guilty of the robbery of Beckum, their convictions for the Beckum robbery cannot establish *two* predicate offenses on the facts presented here. Duran was tried as an aider and abettor. The combined activity of a defendant and an aider and abettor to the crime results in only a single offense. (*People v. Zermeno* (1999) 21 Cal.4th 927, 928-929, 931 [89 Cal.Rptr.2d 863, 986 P.2d 196].) Thus, the convictions of both the defendant and the aider and abettor can establish only one predicate offense for purposes of section 186.22. (*Zermeno,* at pp. 932, 933.)

(i) *Admission of the certified minute order was not barred by the hearsay rule.*

■ We reject appellants' contention that the certified minute order documenting the Aldaco conviction was hearsay and thus inadmissible to prove a predicate offense. Appellants point to *People v. Wheeler* (1992) 4 Cal.4th 284 [14 Cal.Rptr.2d 418, 841 P.2d 938], for the proposition that a court record of conviction is hearsay when offered to prove that the person adjudged guilty actually committed the crime. Appellants' argument, however, fails to take into account intervening changes in the law since *Wheeler.*

*Wheeler* did not address section 186.22; it concerned whether witnesses in a criminal proceeding might be impeached with misdemeanor convictions. The court held that after passage of Proposition 8's Truth-in-Evidence amendment to the California Constitution (Cal. Const., art. I, § 28, subd. (d)), evidence of past misdemeanor conduct bearing on a witness's veracity was admissible in a criminal proceeding subject to the trial court's discretion. (*People v. Wheeler, supra,* 4 Cal.4th at p. 295.) However, *Wheeler* held that the conviction itself was inadmissible hearsay when offered to prove that the witness committed the misconduct. (*Id.* at p. 297.) The court relied upon a statement of the California Law Revision Commission that, " '[a]nalytically, a judgment that is offered to prove the matters determined by the judgment is hearsay evidence. [Citations.] It is in substance a statement of the court that determined the previous action [i.e., other than by a testifying witness] . . . that is offered "to prove the truth of the matter stated." [Citation.] Therefore, *unless an exception to the hearsay rule is provided,* a judgment would be inadmissible if offered in a subsequent action to prove the matters determined.' [Citation.]" (*Id.* at p. 298, quoting Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1966 ed.) foll. § 1300, pp. 342-343, italics added.) *Wheeler* rejected the argument that the fact of conviction alone was relevant to a witness's credibility; instead, "a witness's prior convictions are relevant for impeachment, if at all, only insofar as they prove criminal *conduct* from which the factfinder could infer a character inconsistent with honesty and veracity. [Citations.]" (*People v. Wheeler, supra,* at p. 299.) Accordingly, the court held, "evidence of a misdemeanor *conviction,* whether documentary or testimonial, is inadmissible hearsay when offered to impeach a witness's credibility." (*Id.* at p. 300.) The court also rejected arguments that misdemeanor convictions were admissible under the business or official records exceptions to the hearsay rule (Evid. Code, §§ 1271, 1280), because such a record is "competent only to prove the *act it records.* Thus, while the documentary evidence of a conviction may be admissible to prove that the conviction occurred, the business or official records exceptions do not make the abstract of judgment admissible to show

that the witness committed the underlying criminal conduct." (*People v. Wheeler, supra*, at p. 300, fn. 13.) *Wheeler* noted, however, that the Legislature was not precluded from creating a hearsay exception that would allow the use of misdemeanor convictions for impeachment in criminal trials. (*Id.* at p. 300, fn. 14.)

In *People v. Gardeley, supra*, 14 Cal.4th at page 624, footnote 11, the court referenced *Wheeler* and expressly declined to address whether a section 186.22 predicate offense could be proved through "informations and other official court records" (*Gardeley*, at p. 624) documenting a conviction, or whether such records would constitute inadmissible hearsay when offered to prove "matters determined by that judgment (namely, that [a gang member] committed the crime of which he was convicted) . . . ." The court found it unnecessary to address the issue because the defendants in *Gardeley* had not raised a hearsay objection at trial. (*Ibid.*)

In 1996, the Legislature enacted Evidence Code section 452.5, which provides the type of hearsay exception contemplated in *Wheeler*. Evidence Code section 452.5, subdivision (a) provides that the official records of which a court may take judicial notice (Evid. Code, § 452, subd. (d)) include certain computer-generated official court records. Evidence Code section 452.5, subdivision (b), the provision more directly pertinent to the question before us, states, "An official record of conviction certified in accordance with subdivision (a) of Section 1530 is admissible pursuant to Section 1280 *to prove the commission, attempted commission, or solicitation of a criminal offense, prior conviction, service of a prison term, or other act, condition, or event recorded by the record.*" (Italics added.) Evidence Code section 452.5 was enacted as part of the Criminal Convictions Record Act (CCRA). (Stats. 1996, ch. 642, § 3; *People v. Martinez* (2000) 22 Cal.4th 106, 118 [91 Cal.Rptr.2d 687, 990 P.2d 563].) The Legislature's stated purpose in enacting the CCRA was to "simplify recordkeeping and admission in evidence of records of criminal convictions by establishing a central computer data base of that data, and by authorizing admission in evidence of this computer data." (Stats. 1996, ch. 642, § 2; see also *People v. Martinez, supra*, 22 Cal.4th at p. 119.)

We conclude that Evidence Code section 452.5, subdivision (b) creates a hearsay exception allowing admission of qualifying court records to prove not only the fact of conviction, but also that the offense reflected in the record occurred. ■ In construing a statute, we attempt to ascertain and effectuate the Legislature's intent. (*People v. Gardeley, supra*, 14 Cal.4th at p. 621.) "We turn first to the words of the statute themselves, recognizing

that 'they generally provide the most reliable indicator of legislative intent.' [Citations.]" (*Ibid.*) Here, the language of Evidence Code section 452.5, subdivision (b) is clear and unambiguous. By its terms, certified records of conviction fall within the definition of official records contained in Evidence Code section 1280 (the official records exception to the hearsay rule), and are per se admissible as such. Moreover, a certified official record of conviction is admissible to prove not only the *fact* of a conviction, but also that the offense reflected in the record occurred. We can conceive of no other meaning for Evidence Code section 452.5's declaration that a certified official record of conviction is admissible to prove, not only a prior conviction, but also "the commission" of a criminal offense, and an "act" or "event" recorded by the record. This understanding of the statute is reflected in the Legislative Counsel's Digest for the bill enacting the CCRA, which stated that the CCRA would, among other things, "authorize the admission in evidence of these [computer-generated] records to prove specified facts." (Legis. Counsel's Dig., Assem. Bill No. 1387 (1995-1996 Reg. Sess.), Stats. 1996, ch. 642.) While the Legislature's statement of purpose and the Legislative Counsel's Digest directly reference the computer-generated records, the underlying legislative goals of simplifying and facilitating the admission of evidence of records of criminal convictions are equally effectuated by subdivision (b). Evidence Code section 452.5, subdivision (b) does not limit the statute's purview to computer-generated court records, but broadly includes "an official record of conviction" certified as specified in Evidence Code section 1530. ▬ Thus, we conclude that Evidence Code section 452.5 states a new hearsay exception for certified official records of conviction, which may be offered to prove not only the fact of a conviction, but the commission of the underlying offense.[5]

---

[5]We also note that, in this case, the certified minute order would have been admissible even apart from Evidence Code section 452.5. When *Gardeley* was decided, section 186.22, former subdivision (e) defined "pattern of criminal gang activity" as " 'the commission, attempted commission, or solicitation of two or more' " of the offenses enumerated therein. (*People v. Gardeley, supra,* 14 Cal.4th at p. 625.) In 1996, however, the Legislature amended the relevant portion of section 186.22 to read, "commission of, attempted commission of, or solicitation of, *sustained juvenile petition for, or conviction of* two or more" predicate offenses. (Italics added; see *People v. Loeun, supra,* 17 Cal.4th at p. 12; Stats. 1996, ch. 982, § 1.) This change in language plainly indicates the Legislature's intent that the section 186.22 predicate offenses may be proved by a showing of the fact of the convictions, rather than proof of the underlying conduct, if the People so choose. Were it otherwise, the amended language would have served no purpose. (E.g., *People v. Loeun, supra,* at p. 9 [we avoid statutory interpretations that render words surplusage].) Moreover, even if the statutory language could be considered ambiguous, support for our reading of the amendment to section 186.22 is found in a summary prepared for an April 16, 1996 hearing before the Assembly Committee on Public Safety. That summary explained that the addition of the language to section 186.22 would " 'make it more practical for prosecutors to apply the [Street Terrorism Enforcement and Prevention] Act by allowing the use of previous court records as proof of

Evidence Code section 452.5 does not define the term "official record of conviction," but a certified minute order clearly falls within this definition. In an analogous context, courts have considered "what comprises the record of conviction to which the trier of fact may look to determine whether a prior conviction qualifies as a serious felony. [Citation.]" (*People v. Woodell* (1998) 17 Cal.4th 448, 454 [71 Cal.Rptr.2d 241, 950 P.2d 85].) Those authorities have generally held that the record of conviction includes the trial court record. (*Id.* at pp. 455-456; e.g., *People v. Myers* (1993) 5 Cal.4th 1193, 1195 [22 Cal.Rptr.2d 911, 858 P.2d 301] ["the trier of fact may consider the entire record of the proceedings leading to imposition of judgment on the prior conviction" to determine whether foreign conviction is serious felony for purposes of enhancement statute]; see also *People v. Houck* (1998) 66 Cal.App.4th 350, 355 [77 Cal.Rptr.2d 837].) The trial court record includes, inter alia, all minutes of the court relating to the action. (Cal. Rules of Court, rule 33(a)(1); *People v. Abarca* (1991) 233 Cal.App.3d 1347, 1350 [285 Cal.Rptr. 213] [record of prior conviction includes "all items that could have been used on appeal of that prior conviction, specifically, any items considered a normal part of the record under California Rules of Court, rule 33 or by which it could be augmented pursuant to California Rules of Court, rule 12."].) While courts have noted that "[t]he exact parameters of 'record of conviction' are yet to be defined" (*People v. Houck, supra,* 66 Cal.App.4th at p. 355), there seems little doubt that a minute order reflecting a guilty plea must fall within any definition of the record of conviction. Here, the prosecutor represented, and the parties did not challenge, that the minute order was properly certified. (Evid. Code, § 1530.) There is no question that the minute order reliably reflects the judgment imposed by the trial court. Therefore, pursuant to Evidence Code section 452.5, subdivision (b), the certified minute order was admissible as an official record to prove the Aldaco conviction.

the predicate acts instead of requiring witnesses to the original crime to testify anew,' " in order to " 'provide[] for a more efficient and expeditious delivery of justice to the victims of criminal street gang violence.' " (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 2035 (1995-1996 Reg. Sess.) Apr. 8, 1996, p. 2.) Even before enactment of Evidence Code section 452.5, *Wheeler* observed, "documentary evidence of a conviction may be admissible to prove *that the conviction occurred . . . .*" (*People v. Wheeler, supra,* 4 Cal.4th at p. 300, fn. 13, italics added; e.g., *People v. Cummings* (1993) 4 Cal.4th 1233, 1295, fn. 36 [18 Cal.Rptr.2d 796, 850 P.2d 1] [the official records exception to the hearsay rule "permits use of the record only to establish that a judgment was entered, not to establish that guilt has been determined. [Citations.]".) The minute order would have qualified as an official record even absent Evidence Code section 452.5, subdivision (b). The minute order was made within the scope of a public employee's duty. (E.g., Gov. Code, § 69844 [requiring clerk of superior court to keep minutes and other records of the court].) The minute order stated it was printed on May 18, 1998, the same date Aldaco pleaded guilty, establishing that it was created at or near the time of the plea. Likewise, the trustworthiness requirement was met. We presume the official duty has been regularly performed (Evid. Code, § 664), and this presumption applies to the actions of trial judges and court clerks. (*People v. Martinez, supra,* 22 Cal.4th at p. 125.) This presumption is sufficient to satisfy the trustworthiness requirement. (*Ibid.*)

(ii) *The evidence was sufficient to prove Aldaco was a Florencia 13 gang member.*

■ Finally, we conclude the evidence was sufficient to establish that the Octavio Aldaco referenced in the certified minute order and the Octavio Aldaco known to Officer Burciaga as a Florencia 13 member were one and the same person. Duran argues the evidence was insufficient because Burciaga did not testify to his personal knowledge or observation of proceedings against Aldaco in case No. BA164005 (see *ante*, at p. 1456), nor did the minute order contain a photograph from which Burciaga could have confirmed Aldaco's identity. Therefore, he urges, Burciaga's testimony was "pure speculation."

We conclude the evidence was sufficient. The minute order established the date and nature of Aldaco's conviction. This evidence was unlike the conclusionary, nonspecific hearsay and arrest information deemed insufficient to establish a predicate conviction in other cases. (E.g., *In re Leland D.* (1990) 223 Cal.App.3d 251, 259 [272 Cal.Rptr. 709].) Appellants did not challenge Burciaga's qualifications to testify as an expert. Burciaga was properly allowed to testify as an expert regarding the gang enhancement, and the question of the requisite predicate offenses. (*People v. Gardeley, supra,* 14 Cal.4th at pp. 619-620, 624-626 [gang expert's testimony, which provided much evidence necessary to establish that gang met definition of criminal street gang under § 186.22, subd. (f), was properly admitted]; *People v. Villegas* (2001) 92 Cal.App.4th 1217, 1228 [113 Cal.Rptr.2d 1] [predicate offense was sufficiently established by testimony of gang expert and documentary evidence]; *People v. Valdez* (1997) 58 Cal.App.4th 494, 506 [68 Cal.Rptr.2d 135] [where a gang enhancement is alleged, "expert testimony concerning the culture, habits, and psychology of gangs is permissible because these subjects are 'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' [Citations.]"]; *People v. Gamez* (1991) 235 Cal.App.3d 957, 965-966 [286 Cal.Rptr. 894] [expert testimony regarding gang's activities may often be required to establish gang's past criminal conduct and ongoing criminal nature], overruled on other grounds in *People v. Gardeley, supra,* at p. 624, fn. 10.)

Expert testimony may be founded on material that is not admitted into evidence and on evidence that is ordinarily inadmissible, such as hearsay, as long as the material is reliable and of a type reasonably relied upon by experts in the particular field in forming opinions. (*People v. Gardeley, supra,* 14 Cal.4th at p. 618.) Thus, a gang expert may rely upon conversations with gang members, his or her personal investigations of gang-related crimes, and information obtained from colleagues and other law enforcement agencies. (*Id.* at p. 620; *People v. Olguin, supra,* 31 Cal.App.4th at pp.

1384-1385; *People v. Gamez, supra,* 235 Cal.App.3d at pp. 967-968.) Likewise, an individual's membership in a criminal street gang is a proper subject for expert testimony. (*People v. Valdez, supra,* 58 Cal.App.4th at pp. 506-507; *People v. Gamez, supra,* at p. 965.)

Burciaga unequivocally testified that the minute order reflected the conviction of the Octavio Aldaco he knew. Burciaga personally knew Aldaco, had seen Aldaco's records and "rap sheet," and had reviewed the certified minute order. Burciaga's expert testimony was based upon his field experience, his conversations with Aldaco, and the information contained in the minute order. Appellants cite no authority persuading us that this basis for Burciaga's testimony was improper. Burciaga's testimony, coupled with the minute order, was thus sufficient to prove the predicate offense. (*People v. Gardeley, supra,* 14 Cal.4th at pp. 613, 624 [expert's testimony that individual was a gang member, coupled with evidence of the gang member's conviction for statutorily enumerated offense, was sufficient to prove predicate offense].) Accordingly, we find the evidence was sufficient to allow the jury to reasonably find the Florenica 13 gang engaged in a pattern of criminal gang activity.[6]

b. *Evidence of the gang's primary activities.*

 Appellants next urge that there was insufficient evidence to prove the Florencia 13's primary activity was one of the statutorily enumerated criminal offenses, as required for a true finding on the gang enhancement. Evidence regarding the gang's primary activities was adduced through the testimony of Officer Burciaga. Appellants point out that Burciaga stated the gang's primary activity was "putting fear into the community," an activity not listed as one of the statutorily enumerated criminal offenses.

"To trigger the gang statute's sentence enhancement provision [citation], the trier of fact must find that one of the alleged criminal street gang's primary activities is the commission of one or more of certain crimes listed in the gang statute." (*People v. Sengpadychith, supra,* 26 Cal.4th at p. 322.) "The phrase 'primary activities,' as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes be one of the group's 'chief' or 'principal' occupations. [Citation.]" (*Id.* at p. 323.) Proof that a gang's members consistently and repeatedly have committed criminal activity listed in section 186.22, subdivision (e) is sufficient to

---

[6]Because we conclude the evidence of the Beckum robbery and the Aldaco conviction was sufficient to establish the predicate offenses, we do not reach appellants' contention that the evidence was insufficient to establish that assault with a deadly weapon was a predicate offense.

establish the gang's primary activities. On the other hand, proof of only the occasional commission of crimes by the gang's members is insufficient. (*Id.* at pp. 323-324.) Past offenses, as well as the circumstances of the charged crime, have some tendency in reason to prove the group's primary activities, and thus both may be considered by the jury on the issue of the group's primary activities. (*Id.* at pp. 320, 323.)

■ We conclude the evidence was sufficient to support the jury's finding that the Florencia 13's primary activities were statutorily enumerated criminal offenses.[7] Robbery, assault with a deadly weapon, and narcotics sales are all enumerated offenses. (§ 186.22, subd. (e)(1), (2), & (4).) As explained *ante*, Burciaga testified as an expert, based in part upon his personal experience in the field gathering gang intelligence, contacting gang members, and investigating gang-related crimes. The testimony of a gang expert, founded on his or her conversations with gang members, personal investigation of crimes committed by gang members, and information obtained from colleagues in his or her own and other law enforcement agencies, may be sufficient to prove a gang's primary activities. (*People v. Sengpadychith, supra,* 26 Cal.4th at p. 324; *In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 1005 [279 Cal.Rptr. 236] [primary activities element is a proper subject of expert opinion].) Viewed in context, Burciaga's testimony does not bear the characterization suggested by appellants. When asked what the Florencia 13's primary activities were, Burciaga replied, "There's several. The main one is putting fear into the community. [¶] *Now, when I say that, what I mean is* often these gang members are committing robberies, assault with deadly weapons, narcotics sales, and they're doing it as a group. [¶] And in doing so, they start claiming certain territories within the city . . . . [¶] And they're controlling either the narcotics sales in that area, they're committing the robberies in this area, all for the purpose of fear and intimidation of the community." (Italics added.)

This testimony supported a jury finding that members of the Florencia 13 were engaged in more than the occasional sale of narcotics, robbery, or assault. Burciaga testified that the Florencia 13 members engaged in these activities "often," indeed often enough to obtain "control" of the narcotics trade in a certain area of Los Angeles. Evidence of the Beckum robbery and the Aldaco conviction further corroborated Burciaga's testimony, providing specific examples of Florencia 13 members' commission of robbery and narcotics offenses. We conclude the evidence was sufficient to support the

---

[7]We assume arguendo that the gang's goal of "putting fear into the community," as stated by Burciaga, was not equivalent to a statement that the gang engaged in the victim and witness intimidation prohibited by section 136.1, an offense enumerated in section 186.22, subdivision (e)(8).

jury's true finding on the section 186.22 gang enhancement alleged as to the Beckum robbery.[8]

B.-D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment for appellant Fonseca is modified as set forth herein. The clerk of the superior court is directed to prepare an amended abstract of judgment for Fonseca consistent with the opinions set forth herein and to forward a copy to the Department of Corrections. In all other respects, the judgments are affirmed.

Klein, P. J., and Kitching, J., concurred.

Appellants' petitions for review by the Supreme Court were denied July 24, 2002. Werdegar, J., and Brown, J., did not participate therein.

---

[8]Duran contends that because there was insufficient evidence the robbery of Beckum was committed for the benefit of a criminal street gang, he could not be charged and sentenced as a principal on count 4. As we have concluded there was sufficient evidence to support the gang enhancement imposed in regard to count 4, Duran's argument necessarily fails.

*See footnote, *ante*, page 1448.