Filed 5/21/15  P. v. Cooper CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EDWARD EMIL COOPER,<br><br>Defendant and Appellant. | F067544<br><br>(Super. Ct. No. CRF39839)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Jessie Morris, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

On April 5, 2013, defendant Edward Emil Cooper was charged with one count of evading an officer while operating a motor vehicle in willful disregard for the safety of

others (count I, Veh. Code, § 2800.2, subd. (a)), one count of evading an officer by driving a motor vehicle in a direction opposite to traffic (count II, Veh. Code, § 2800..4), and one count of driving with a suspended license (count III, Veh. Code, § 14601.2, subd. (a)). As to count III, the information alleged defendant had committed four prior violations of Vehicle Code section 14601.2, subdivision (a) within seven years of the offense alleged in count III. Following a jury trial, defendant was found guilty of all charges and subsequently sentenced to an aggregate term of 32 months in prison.

On appeal, defendant argues that (1) defendant was prejudiced by inadmissible hearsay evidence, (2) the prosecution impermissibly shifted the burden of proof onto defendant during closing argument, (3) there was insufficient evidence to support defendant's convictions, (4) the prosecution committed misconduct by disparaging defense counsel during closing argument, (5) defendant was prejudiced by the cumulative effect of the preceding errors, and (6) the trial court erred by declining to stay defendant's punishment for driving on a suspended license as is required by Penal Code section 654. We agree that the punishment imposed for driving on a suspended license must be stayed pursuant to section 654. In all other respects, the judgment is affirmed.

## FACTS

On March 24, 2013, Officer Andrew Theodore was on patrol when he noticed a motorcycle being operated without a rear license plate. Theodore attempted to initiate a traffic stop by activating his overhead lights and siren, but the motorcycle's driver refused to pull over and instead fled at speeds exceeding 90 miles per hour. During the ensuing chase, the motorcycle drove through two red lights and at least two stop signs, as well as crossed into oncoming traffic 20 times. The entire chase was captured on Theodore's patrol car dashboard camera (dash cam), and the video was played to the jury at trial.

On two occasions during the chase—once when the motorcycle made a wide left turn and once when it made a U-turn and passed within a few feet of the patrol car's driver side window—Officer Theodore was able to observe the driver's face through the

2.

opened visor of the driver's helmet. Upon viewing the driver's face, Theodore was "one hundred percent sure" the motorcycle was being driven by defendant, a person familiar to Theodore.

Eventually, 20 minutes after the chase began, defendant was able to elude Theodore by taking an abrupt switchback and escaping down a dirt roadway. Local law enforcement was advised there was probable cause to arrest defendant, and he was apprehended the following day. At the time of his arrest, defendant denied fleeing from Theodore and stated he had been at his mother's house during the time of the chase. Defendant neither confirmed nor denied ownership of the motorcycle, but subsequent investigation established it was not registered to defendant.

## DISCUSSION

### I. Defendant Was Not Prejudiced by Officer Theodore's Testimony Concerning the Number of Motorcycles Owned by Defendant

At trial, Sergeant Turu Vanderwiel testified that in late March, prior to the events in this case, he had taken a photograph of a motorcycle parked outside of a home defendant was known to reside at and circulated it to the other officers in his precinct. The motorcycle in the photograph was the same as one later involved in the chase with Officer Theodore.

Following Vanderwiel's testimony, Theodore testified he believed defendant owned or possessed two motorcycles but he had never personally observed defendant riding a motorcycle prior to the chase on March 24, 2013. During cross-examination, the following exchange took place:

> "By [DEFENSE COUNSEL]: Q. How is it that you know [the motorcycle from the chase] belongs to [defendant]?
>
> "A. How did I know?
>
> "Q. Uh-huh.
>
> "A. It was based on the information provided by Sergeant Vanderwiel he had received and he later confirmed by locating the motorcycle at his mother's residence and his girlfriend's residence.

3.

"Q. That is based on what somebody else told you?

"A. My supervisor, yes, correct. It is based on what somebody else told me.

"[DEFENSE COUNSEL]: Your Honor, I'm going to move to strike the testimony that he knows how many motorcycles. It is clear hearsay.

After hearing arguments outside the presence of the jury, the trial court denied defense counsel's motion to strike, finding the photograph was "conveyed to Officer Theodore [as] part of an ongoing investigation," and was "not being offered for the truth" of the matter stated.

Now, defendant again contends the trial court erred by refusing to strike Theodore's testimony concerning the number of motorcycles owned by defendant. We agree, but find the error harmless.

Hearsay evidence is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) Here, Theodore's testimony that defendant owned the motorcycle in the picture was based entirely on information provided to Theodore by Sergeant Vanderwiel. This evidence was relevant only to show defendant owned the motorcycle. Accordingly, that portion of Officer Theodore's testimony was hearsay and should have been excluded by the trial court.

This error, however, was manifestly harmless. The erroneous admission of evidence does not require reversal unless "the error or errors complained of resulted in a miscarriage of justice." (Evid. Code, § 353, subd. (b).) A miscarriage of justice occurs when "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Here, the photograph Officer Theodore referred to had already been introduced into evidence by the time he took the stand, Further, as noted below, there was ample evidence to support defendant's convictions. Theodore testified he was absolutely certain

4.

defendant was the driver of the motorcycle after observing the driver's face twice during the chase. And while Theodore did reference the photograph when testifying how he identified the motorcycle's vehicle identification number and how he concluded that defendant possessed the motorcycle, Theodore's identification of defendant during the chase appears to have been based solely on his observation of defendant's face during that chase. In fact, the record shows Theodore identified defendant as the driver over his police radio immediately after the first turn where he claimed to have seen defendant's face. Given the strength of Officer Theodore's identification, the aspects of his testimony concerning the photograph taken by Sergeant Vanderwiel were collateral at best, and did not result in a miscarriage of justice. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

## II. The Prosecution Did Not Commit Misconduct by Arguing Defendant's Failure to Present Alibi Witnesses

At trial, Officer Theodore testified defendant claimed to have been at his mother's house during the time the chase took place. Over defendant's relevance objection, Theodore also testified defendant's mother was in the courtroom. During closing arguments, defense counsel made the following remarks:

> "Now, Officer Theodore was asked about when he saw [defendant]'s mother. He saw her yesterday, and the implication from that is, 'Why didn't I call her as a witness?' [Defendant] said he was there all day. But if I called her, [the prosecution] would tell you, 'It's his mother. Of course she is going to testify in his favor.' The real question is if that is truly an issue.

> "And if the D.A. wants to argue [defendant] was not at her house, why didn't the prosecution call her after all. If [defendant] wasn't there? She is the one to ask. Boy, that just supports their case. Why didn't they? Well, maybe because they didn't bother. Maybe they did and she didn't say what they wanted to hear. Again, unless the evidence proves the defendant is guilty beyond a reasonable doubt, [defendant] is entitled to a verdict of not guilty."

During rebuttal, the prosecution made the following argument:

> "And what about the mother and the girlfriend? They were here. The defense presented no evidence about where the defendant was that day. Now, I expect every witness to tell the truth when they take the stand. I

have the same expectation for every single witness to tell the truth. And that is what I tell my witnesses: 'Tell the truth. Get on the stand and tell the truth.' The mother and the girlfriend did not testify."

On appeal, defendant does not challenge the court's ruling on his relevance objection. Instead, defendant argues the prosecution's comments during closing arguments impermissibly shifted the burden of proof onto defendant and improperly presented a condensed version of what defendant's potential alibi witnesses would have testified to had they taken the stand. We find this claim is forfeited for failure to object on these grounds at trial.

While the prosecution is prohibited from making direct or indirect comment on a defendant's failure to testify, that prohibition does not extend to comments on the failure of the defense to introduce material evidence or to call logical witnesses. (*People v. Hughes* (2002) 27 Cal.4th 287, 372.) A trial court has discretion when determining whether a comment on a defendant's failure to call witnesses is permissible or impermissible. (*People v. Ford* (1988) 45 Cal.3d 431, 437.) Here, however, the court was never asked to exercise this discretion, as defendant did not object during closing arguments. Thus, "defendant has waived his right to complain of [the] asserted … error on appeal." (*People v. Hughes*, *supra*, at p. 372.)

Further, even if defendant had not forfeited the issue, we do not find the comments improper. At trial, Officer Theodore testified defendant claimed he was at his mother's house during the time the chase took place, but defendant's mother was not called as a witness for the defense. As defendant's mother would have been a corroborating witness to the alibi defendant asserted to law enforcement, she was a logical witness, and the prosecution was not prohibited from commenting on the defense's failure to call her, especially after defense counsel had called attention to this issue in argument.

Defendant attempts to circumvent this fact, however, by claiming the prosecution's comments improperly summarized what the testimony of any alleged alibi witness would have been. In support of this argument, defendant points to *People v.*

*Gaines* (1997) 54 Cal.App.4th 821, 824-825 (misconduct to state during closing arguments that "[the alibi witness] was going to testify to the contrary. [He] would have impeached the defendant, and it was the defense that got [him] out of here before he could damage them"), and *People v. Wolfe* (1954) 42 Cal.2d 663, 667-668 (misconduct to state during closing arguments "how many convicts do you think will testify on behalf of the People in a case like this? [Y]ou know that if any man, any convict came down here and testified against [the defendants] he would be setting himself up for a knife in his own back").

These cases are readily distinguished, however, as in this case the prosecution did not state defendant's potential alibi witnesses would impeach defendant if they testified, nor did the prosecution suggest defendant would kill any witnesses that were called to impeach him. Instead, the prosecutor's remarks constituted acceptable comment on the defense's decision not to call logical witnesses. Accordingly, defendant's argument fails.[1]

## III.     There Was Sufficient Evidence to Support Defendant's Convictions

Next, defendant argues his convictions were not supported by sufficient evidence. We disagree. When addressing a challenge to the sufficiency of the evidence, we view the record in the light most favorable to the conviction and presume the existence of every fact in support of the conviction the trier of fact could reasonably infer from the evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.). "Reversal is not warranted unless it appears '"that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." [Citation.]' [Citation.]" (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1457.)

---

[1]Defendant also argues his trial counsel was ineffective for failing to object to the People's closing arguments. As we find the comments in question were not improper, defendant's claim of ineffective assistance of counsel must fail. "Representation does not become deficient for failing to make meritless objections." (*People v. Ochoa* (1998) 19 Cal.4th 353, 463.)

7.

In this case, Officer Theodore testified he had been acquainted with defendant prior to the chase, and he was "one hundred percent sure" he saw defendant's face on two occasions during the chase, once from a distance of only seven feet. In fact, the evidence shows Theodore twice identified defendant by name over his police radio while the chase was ongoing. The evidence also showed the boots defendant was wearing when he was arrested were the same as the boots the driver of the motorcycle had been wearing, and the motorcycle was the same as one that had been photographed outside of a house where defendant resided.

Defendant attempts to rebut this evidence, however, by arguing his face was not identifiable in the dash cam video, no evidence directly established he owned or rode the motorcycle in question, and no evidence established his boots were unusual amongst motorcyclists. This is little more than a call for this court to reweigh the evidence. The jury viewed the dash cam footage, heard Officer Theodore's testimony, and observed the boots defendant was wearing at the time of his arrest prior to rendering its verdict. Further, while defendant asserts the dash cam footage does not show the motorcycle rider's face, Officer Theodore specifically testified his vantage point was different and superior to that of the dash cam, and the jury was given the opportunity to sit in a patrol car identical to the one driven by Officer Theodore on the date of the chase.

"A single witness' uncorroborated testimony is sufficient to sustain a conviction unless the testimony is physically impossible or inherently improbable. [Citation.]" (*People v. Turner* (1983) 145 Cal.App.3d 658, 671, disapproved on other grounds in *People v. Newman* (1999) 21 Cal.4th 413.) Here, Officer Theodore's identification was unequivocal, and having viewed the video and the patrol car, it is clear the jury did not find it to be physically impossible or inherently improbable. Given the strength of Theodore's testimony, as well as the corroborating circumstantial evidence, we find there was ample evidence to support defendant's convictions.

**IV.   The Prosecutor Did Not Commit Misconduct by Referring to the Defense as a "Jedi Mind Trick"**

During closing arguments, the prosecution made the following remarks:

"The defense in this case is—and I'm loathed [*sic*] to use movie references, I'm hoping at least some of you understand this one, it is pretty good—is the Jedi mind trick.  That is the defense.  These aren't the droids you're looking for.  This is the evidence.  That is the argument, 'This isn't the driver.'"

Defense counsel objected to the prosecutor's comments, but was overruled.

On appeal, defendant asserts the prosecution committed prejudicial misconduct by referring to his defense as a "Jedi mind trick."  Specifically, defendant alleges that, because the Jedi mind trick in the movie Star Wars (Twentieth Century Fox 1977) was alleged to only work on the weak-minded, the prosecutor's remarks claimed defense counsel viewed the jurors as weak-minded individuals and had presented them with a fabricated defense.  We disagree.

"The applicable federal and state standards regarding prosecutorial misconduct are well established.  '"A prosecutor's … intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.'"  [Citations.]" (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)  "Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves '"the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."'  [Citation.]" (*Ibid.*)

Here, the prosecutor's comments can hardly be said to be egregious, deceptive, or reprehensible.  In Star Wars, a Jedi Knight employs the Jedi mind trick by asserting to investigating stormtroopers that "these are not the droids you're looking for," when the droids accompanying the Jedi Knight are, in fact, the droids the stormtroopers were looking for.  (<http://www.imsdb.com/scripts/Star-Wars-A-New-Hope.html> (as of May 19, 2015).)  While perhaps overly flippant, we do not find this to be an egregious denigration of the defense in this case.  In fact, the instant case did boil down to the

9.

prosecutor insisting that defendant was the driver of the motorcycle, while defendant asserted he was not the driver of the motorcycle.

Similarly, we find no merit to defendant's claim the jurors would infer from the prosecutor's remarks that defense counsel believed them to be weak-minded. Such an interpretation would assume not only an extensive knowledge of Star Wars on the part of the members of the jury, but also that the jurors interpreted the prosecutor's remark in the most offensive and damaging way imaginable. However, "we do not lightly infer that the prosecutor intended his remarks to have their most damaging meaning or that the jury drew that meaning rather than the less damaging one." (*People v. Howard* (1992) 1 Cal.4th 1132, 1192.) As we find the prosecution's comments were neither improper nor prejudicial, defendant's argument must fail.

## V. Defendant Was Not Prejudiced By Cumulative Error

Defendant argues that even if none of the errors alleged above merits reversal on its own, the cumulative effect of those errors requires reversal. We disagree. Under the cumulative error doctrine, reversal may be required when the cumulative effect of the errors made at trial amounted to a miscarriage of justice. (See *People v. Hill* (1998) 17 Cal.4th 800, 844.) While we found the trial court erred by admitting Officer Theodore's hearsay testimony, that error was harmless and we find no other errors. Therefore, in the absence of errors to accumulate, we must reject defendant's contention he was harmed by the cumulative effect of multiple judicial errors.

## VI. Defendant's Sentence for Count III Should Be Stayed

At sentencing, the trial court sentenced defendant to a term of two years for count I, two years for count II, and one year for count III. The trial court stayed the sentence for count II pursuant to Penal Code section 654, but did not stay the sentence for count III, driving with a suspended license. On appeal, defendant contends the court should have stayed his sentence for driving with a suspended license as well, as all three of his convictions stemmed from a single act. The People concede this error, and we agree.

10.

Under Penal Code section 654, subdivision (a), "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." For the purposes of section 654, an act is "a single physical act that violates different provisions of law." (*People v. Jones*, *supra*, at p. 358.)

Here, all three of defendant's convictions arose out of the single, continuous physical act of driving his motorcycle. Accordingly, defendant should be punished under the provision that provides for the longest potential term of imprisonment, and the remaining punishments should be stayed. As count III, driving with a suspended license, does not provide for a longer term of imprisonment than count I, evading an officer while operating a motor vehicle in willful disregard for the safety of others, we order that defendant's sentence for count III be stayed.

## DISPOSITION

The judgment is modified to stay the sentence on count III pursuant to Penal Code section 654. The clerk of the Tuolumne Superior Court is directed to prepare an amended abstract of judgment and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
CORNELL, Acting P.J.


_____
GOMES, J.

11.