Filed 6/21/16  P. v. Meade CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G051923 |
| v. | (Super. Ct. No. 14HF1120) |
| DAVID JOHN MEADE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

David John Meade appeals from a judgment after a jury convicted him of driving under the influence of alcohol with three or more priors and driving with a blood alcohol level of 0.08 percent or higher with three or more priors. Meade argues insufficient evidence supports his convictions. We disagree and affirm the judgment.

FACTS

One evening, Meade entered a Ralph's grocery store where he took chicken and a 750 milliliter bottle of vodka and consumed them in the bathroom. Brandon Roth, a store employee who found the remnants and assumed Meade was homeless and living in his car, did not call the police.

The next evening, Roth went to retrieve shopping carts from the parking lot and saw Meade in his car. About an hour later, around 9:56 p.m., Roth saw Meade drive through an empty parking lot for about 20 seconds, cutting through the stalls, traveling about 20 or 30 yards and park. Roth did not see Meade consume alcohol in his car and Meade did not drive erratically. Roth went back inside the store when his break ended at 10:09 p.m.

About 10:34 p.m., Meade entered the store and went to the floral section.[1] When Roth approached Meade, he asked Roth where the phone chargers were located. After Roth assisted Meade, Roth left to help another customer. Meade went to the alcohol aisle and a couple minutes later, he left the store with a white bag in his hand. Roth, concerned Meade stole a phone charger, alerted the manager Stephanie Meyer, who called the police and told them what Roth had observed. Roth later found a phone charger in the floral section.

Within minutes, deputy sheriffs Rodney Elcock and Mihaela Mihai arrived and saw a car parked improperly in the parking spot, which suggested to Mihai possible intoxication. Meade was sitting in the driver's seat with the engine off and the keys in his

_____

[1] Video surveillance of Roth's movements in the store were played for the jury.

2

pocket.  Mihai detected a strong or moderate smell of alcohol coming from Meade, his speech was slow and slurred, and his eyes were watery and glossy.  When Mihai learned Roth saw Meade drive his car and was willing to be a witness, sheriffs shifted their investigation to drunk driving.  Throughout the investigation, Meade maintained a consistent level of intoxication, admitted to drinking alcohol hours earlier at a sports bar, denied drinking in the hour before police contacted him, and blew a 0.217 on the Breathalyzer.

Elcock had Roth sign a private citizen's arrest form and sheriffs arrested Meade.  Sheriffs did not find any alcohol containers in or near Meade's car. At 12:52 a.m., Meade provided a blood sample indicating his blood alcohol level was 0.263, which based on Meade's weight would require 14 to 15 drinks.

An information charged Meade with the following:  driving under the influence of alcohol with three or more priors (Veh. Code, § 23152, subd. (a), all further statutory references are to the Veh. Code, unless otherwise indicated) (count 1); driving with blood alcohol level of 0.08 percent or higher with three or more priors (§ 23152, subd. (b)) (count 2); and misdemeanor driving with a suspended license with a prior (§ 14601.2, subd. (a)) (count 3).  The information alleged Meade had a blood alcohol level of .20 percent or higher.  The information also alleged there were three prior drunk driving convictions.  On the prosecution's motion, the trial court dismissed count 3.

At trial, Roth testified that although he detected a "funk" coming from Meade when they were in the store that he attributed to his possible homelessness, Meade did not smell of alcohol and he did not appear to be intoxicated.  He also testified that during later interviews with Mihai and a deputy district attorney, he never said Meade appeared intoxicated.  He also said his memory of the events was fresher when they happened.  Meyer testified that when Roth told her that he suspected Meade stole something, Roth also said Meade smelled of alcohol.

3

The jury convicted Meade of both counts but found untrue he had a blood alcohol level of .20 percent or higher.[2] Meade admitted he suffered three prior drunk driving convictions. After the trial court denied his new trial motion, the court suspended imposition of sentence on count 1 and placed him on formal probation for five years with credits for time served. The court stayed the sentence on count 2 pursuant to Penal Code section 654.

## DISCUSSION

Meade argues there was insufficient evidence to establish he was intoxicated while driving his car because the only witness who saw him drive, Roth, testified he did not drive erratically and did not smell of alcohol or appear to be intoxicated just 30 minutes later. We disagree.

When addressing a challenge to the sufficiency of the evidence, we view the record in the light most favorable to the conviction and presume the existence of every fact in support of the conviction that the trier of fact could reasonably infer from the evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "Reversal is not warranted unless it appears '"that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." [Citation.]' [Citation.]" (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1457 (*Duran*).)

Section 23152, subdivision (a), prohibits a person from operating a vehicle if the person's ability to operate the vehicle has been impaired by alcohol. Section 23152, subdivision (b), prohibits a person from driving with a blood alcohol level of .08 percent or higher.

---

[2] The trial court instructed the jury with a statutory presumption that permitted it to conclude Meade's blood alcohol level was over the legal limit at the time of the offense if a chemical test revealed his blood alcohol level was 0.08 percent or more within three hours of driving.

4

Here, based on the entire record, the jury could reasonably conclude Meade was under the influence of alcohol, with a blood alcohol level of 0.08 or higher, when he drove his vehicle. Roth saw Meade drive across the parking lot, through stalls, and park askew in a parking spot. About 30 minutes later, Roth interacted with Meade and when Roth became suspicious Meade stole a charger, he reported his suspicions to Meyer, including that Meade smelled of alcohol. Less than one hour after Roth saw Meade drive, Mihai concluded Meade was intoxicated based on the fact he smelled of alcohol, he slurred his speech, his eyes were glossy, and he parked his car improperly.

Additionally, about three hours after Roth saw Meade drive his car, Meade's blood alcohol level was 0.263. Sheriffs found no evidence in or near his car to suggest he had been drinking in his car from the time he drove to the time sheriffs arrived. Meade would have had to drink about 14 to 15 drinks to achieve that level of intoxication, and the jury would have had to believe he drank nearly all that in less than one hour.

Meade cites to the following facts to support his contention insufficient evidence supports the conclusion he was intoxicated when he drove: Roth testified he did not see him drive erratically; Roth testified that less than 30 minutes after he drove, Meade did not smell of alcohol or appear intoxicated; Meade could have stolen alcohol in the white bag and he could have become intoxicated *after* he drove; Roth testified that at subsequent interviews he never stated Meade appeared intoxicated; and the prosecution/Mihai did not produce the citizen's arrest form. Additionally, Meade asks the court to watch the video surveillance, which shows him steady on his feet.

In conjunction with our review of the record, we have watched the video surveillance. Essentially, what Meade asks us to do is reweigh the evidence and substitute our judgment for that of the jury's. As Meade knows, we cannot do that. (*Duran, supra,* 97 Cal.App.4th at p. 1457.) Certainly, Meade is a heavy drinker and could have consumed a large amount of alcohol in a short period of time. But it was

5

reasonable for the jury to conclude that based on the amount of alcohol Meade had drank, in the amount of time he had to drink it, and the lack of evidence he drank in his car, he was intoxicated when he drove. Thus, there was sufficient evidence supporting Meade's convictions.

## DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:

BEDSWORTH, J.

THOMPSON, J.

6