Filed 8/26/13  P. v. Jenkins CA2/6
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY JENKINS,<br><br>    Defendant and Appellant. | 2d Crim. No. B241933<br>(Super. Ct. No. LA063888T)<br>(Los Angeles County) |

Timothy Jenkins appeals from the judgment entered after a jury convicted him of four counts of attempted voluntary manslaughter (Pen. Code, §§ 664, 192, subd. (a)),[1] four counts of shooting from a motor vehicle at another person (former § 12034, subd. (c), now § 26100, subd. (c)), and one count of shooting at an inhabited dwelling. (§ 246.)  On two counts of attempted voluntary manslaughter, the jury found true allegations that appellant had personally inflicted great bodily injury. (§ 12022.7, subd. (a).)  On all four counts of attempted voluntary manslaughter, the jury found true allegations that appellant had personally used a firearm. (§ 12022.5, subd. (a).)  On the four counts of shooting from a motor vehicle at another person and the one count of shooting at an inhabited dwelling, the jury found true allegations that appellant had personally and intentionally discharged a firearm causing great bodily injury to two

---

[1] All statutory references are to the Penal Code.

1

victims. (§ 12022.53, subd. (d).) On all nine counts, the jury found true allegations that the offenses had been committed for the benefit of a criminal street gang. (§ 186.22, subd. (b).) Appellant was sentenced to prison for 40 years to life.

Appellant contends that the evidence is insufficient to support the true findings on the gang allegations. He argues that the People failed to show that the gang's "primary activities" qualify it as a "criminal street gang" within the meaning of section 186.22, subdivision (f). We affirm but direct the trial court to correct an error in the abstract of judgment.

*Facts*

Appellant was a member of the Pacoima Piru Bloods (PPB). In September 2009 appellant and members of his family went to a party at a house. Some of the people at the party were members of the Crips, a rival gang.

During the party, a "commotion" occurred inside the house. Appellant and several other persons were "acting out." A resident of the house told appellant that she "didn't want no trouble out of" him. Appellant and his companions left the party. One of them yelled, "Blood, it ain't over." They entered a car, which "crept up" by the house where the party was occurring. Someone inside the car said, "What did you say, Blood?" A hand came out of the open window and fired four gunshots. Appellant was the shooter.

When the shots were fired, people were standing outside around the porch area of the house. Two persons were struck by bullets. Two bullets penetrated the garage door. The garage was used as a bedroom. At the time of the shooting, a three-year-old girl was inside the garage.

*Testimony of Gang Expert*

The gang expert was Officer Rex Ingram. He testified as follows: During the previous year, he had kept track of two gangs, one of which was PPB. As a gang officer, he came into contact with gang members on a daily basis. Gang members are expected to "put in work" for the gang, which "includes committing violent crimes."

2

Based on his personal experience and information from other gang officers, the "primary activities" of PPB are "murder, attempt[ed] murder, robberies, weapons violations, narcotics sales, vandalisms, and any sort of assault."  A member of PPB was convicted of an attempted murder committed in  December 2007.  Another member was convicted of six counts of robbery and one count of assault with a firearm committed in January 2009.

### *Sufficiency of the Evidence: Standard of Review*

We "review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence - that is, evidence that is reasonable, credible, and of solid value - such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]"  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

### *Substantial Evidence Supports the Finding that PPR's*
### *"Primary Activities" Qualify It as a "Criminal Street Gang"*

To qualify as a "criminal street gang," a gang must have "as one of its primary activities the commission of one or more" statutorily enumerated criminal acts. (§ 186.22, subd. (f).)  The criminal acts include robbery, unlawful homicide, and narcotics sales.  (§ 186.22, subd. (e)(2)-(4).)  The attempted commission of the enumerated crimes also satisfies the "primary activities" requirement.  (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1227-1228 & fn. 16.)  In instructing the jury, the trial court mentioned the crimes of robbery, murder, attempted murder, and narcotics sales.[2]

"Sufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute.  *Also sufficient might be expert testimony*, as occurred in [*People v.*] *Gardeley* [1996] 14 Cal.4th 605."  (*People v. Sengpadychith* (2001) 26 Cal.4th 316,

---

[2] The court instructed that a criminal street gang must have, "as one or more of its primary activities, the commission *of murder*, robbery and sales of narcotics."  But a few paragraphs later, the court specified the primary activities as "the commission *of attempted murder*, robbery, and sales of narcotics."  (Italics added.)

3

324, first italics in original, second italics added.) In *Gardeley* the primary activities "requirement was satisfied by the testimony of a police gang expert who expressed his opinion that the primary activities of the group in question were drug dealing and witness intimidation, both statutorily listed crimes. [Citation.]" (***Id***., at p. 322.) "The gang expert based his opinion on conversations he had with Gardeley and fellow gang members, and on 'his personal investigations of hundreds of crimes committed by gang members,' together with information from colleagues in his own police department and other law enforcement agencies. [Citation.]"[3] (***Id***., at p. 324.)

Substantial evidence supports the finding that PPB's primary activities included the commission of one or more of the statutorily enumerated criminal acts. Officer Ingram, a gang expert, opined that PPB's primary activities included the commission of of murder, attempted murder, robbery, and narcotics sales. His opinion was based on his personal experience and information from other gang officers. Ingram had first-hand knowledge of PPB's activities since, for the previous year, he had been keeping track of PPB and one other gang. He had come "into contact with gang members every day." Ingram testified: "I have a pretty good relationship with the gang members in each gang, and we . . . have casual conversations about various things, including history of the gang, lifestyle." Ingram "also interview[ed] them on crimes, detentions, arrests, [and] as victims of crimes." Ingram continued: "When a patrol officer makes an arrest or has a victim that comes to the station . . . for a gang-related crime, I make it my habit to go and talk to that person to see exactly what happened." "The testimony of a gang expert, founded on his or her conversations with gang members, personal investigation of crimes committed by gang members, and information obtained from colleagues in his

---

[3] We reject appellant's contention that "*Sengpadychith* requires proof that the primary activities were 'consistently and repeatedly' engaged in." The above quoted excerpts from *Sengpadychith* show that the primary activities requirement may also be satisfied by expert testimony as to the gang's primary activities.

4

or her own and other law enforcement agencies, may be sufficient to prove a gang's primary activities. [Citations.]" (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1465.)

*In re Alexander L.* (2007) 149 Cal.App.4th 605, is distinguishable. There, a gang expert was asked about a gang's primary activities. He replied: " 'I know they've committed quite a few assaults with a deadly weapon, several assaults. I know they've been involved in murders. [¶] I know they've been involved with auto thefts, auto/vehicle burglaries, felony graffiti, narcotic violations.' No further questions were asked about the gang's primary activities on direct or redirect examination." (*Id*., at p. 611.) The appellate court concluded that this testimony was insufficient to establish the "primary activities" requirement because it lacked an adequate foundation: "No specifics were elicited as to the circumstances of these crimes, or where, when, or how [the expert] had obtained the information." (*Id*., at pp. 611-612.) The court also noted: The expert "`did not directly testify that criminal activities constituted [the gang's] primary activities. Indeed, on cross-examination, [he] testified that the vast majority of cases connected to [the gang] that he had run across were graffiti related." (*Id*., at p. 612.)

Unlike the expert in *Alexander L.*, Officer Ingram directly testified that PPB's primary activities included the commission of statutorily enumerated criminal acts. In addition, a proper foundation was laid for Ingram's testimony. During his one year as a gang officer, he had conversed with PPB members, personally investigated gang-related crimes, and obtained information about PPB from other gang officers. (See *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1330 [expert's "eight years dealing with the gang, including investigations and personal conversations with members, and reviews of reports suffices to establish the foundation for his testimony"].) Thus, based on Ingram's expert testimony, a reasonable trier of fact could find beyond a reasonable doubt that PPB's primary activities qualified it as a criminal street gang.

Moreover, the People presented evidence of specific offenses committed by PPB members. One PPB member had been convicted of attempted murder and another had

5

been convicted of six counts of robbery. "Past offenses . . . have some tendency in reason to prove the group's primary activities, and thus . . . may be considered by the jury on the issue of the group's primary activities. [Citation.]" (*People v. Duran*, *supra*, 97 Cal.App.4th at p. 1465.)

*Abstract of Judgment*

For count 9, shooting at an inhabited dwelling (§ 246), the abstract of judgment contains an error not mentioned by either party. The court considered count 9 to be "the controlling count in this case." In view of the true finding on the gang allegation, the court sentenced appellant to "life in prison, with the minimum eligibility of parole of 15 years," pursuant to section 186.22, subdivision (b)(4)(B).[4] It added a consecutive term of 25 years to life for the section 12022.53, subdivision (d) enhancement. The court stated: "So the total term on count nine is life; minimum eligibility of parole, 15 years; followed by 25 to life."

The abstract of judgment conflicts with the sentence pronounced by the court on count 9. It shows that, for the violation of section 246, appellant was sentenced to life imprisonment plus 25 years to life for the section 12022.53, subdivision (d) enhancement. The abstract also shows that the gang enhancement was stayed. The abstract refers to the gang enhancement as section "186.22(B)(1)(C)." Under "Other orders" on page 2, the abstract states: "Defendant is sentenced to life in prison with the minimum eligibility of parol[e] of 15 years." The abstract does not mention the correct gang enhancement provision, section 186.22, subdivision (b)(4)(B).

---

[4] Section 186.22, subdivision (b)(4)(B) provides: "(4) Any person who is convicted of a felony enumerated in this paragraph committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, be sentenced to *an indeterminate term of life imprisonment with a minimum term of* the indeterminate sentence calculated as the greater of: [¶] . . . [¶] (B) Imprisonment in the state prison for *15 years,* if the felony is . . . a felony violation of Section 246 . . . ." (Italics added.)

6

"[W]hen, as here, the crime [of shooting at an inhabited dwelling in violation of section 246] is committed to benefit a criminal street gang, the punishment is life imprisonment, with a minimum parole eligibility of 15 years. (§ 186.22(b)(4).)" (*People v. Jones* (2009) 47 Cal.4th 566, 572; see also *People v. Sok* (2010) 181 Cal.App.4th 88, 96 ["Section 186.22, subdivision (b)(4), not subdivision (b)(1)(C), is applicable if the felony committed to benefit a criminal street gang is 'a . . . felony violation of Section 246' "].) "[T]he 15-year minimum term prescribed by section 186.22(b)(4) is not a sentence enhancement" because "it is not an 'additional term of imprisonment' and it is not added to a 'base term.' " (*People v. Jefferson* (1999) 21 Cal.4th 86, 101.) "[T]he 15-year minimum term in section 186.22(b)(4) sets forth an *alternate* penalty for the underlying felony itself . . . ." (***Ibid***.)

## Disposition

The judgment is affirmed. The trial court is directed to correct the abstract of judgment for count 9 (shooting at an inhabited dwelling in violation of section 246) to show a penalty for the underlying offense of life imprisonment with a minimum parole eligibility period of 15 years pursuant to section 186.22, subdivision (b)(4)(B), plus an enhancement of 25 years to life pursuant to section 12022.53, subdivision (d). The court is further directed to strike the notation that an enhancement under section 186.22(b)(1)(C) was stayed. A copy of the corrected abstract shall be forwarded to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

7

Martin Larry Herscovitz, Judge

Superior Court County of Los Angeles

_____

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, Marc A. Kohm, Deputy Attorney General, for Plaintiff and Respondent.