Filed 12/12/14  P. v. Bryant CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

`

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SAMUEL XAVIER BRYANT et al.,<br><br>    Defendants and Appellants. | F066725<br><br>(Super. Ct. No. BF140718A &<br>BF140718B)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Robert Derham, under appointment by the Court of Appeal, for Defendant and Appellant Samuel Xavier Bryant.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant Joseph Jamal Hendrix.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Ryan B. McCarroll, for Plaintiff and Respondent.

SEE CONCURRING OPINION

## INTRODUCTION

On July 3, 2012, appellants Samuel Xavier Bryant and Joseph Jamal Hendrix were charged in the murder of Jacob Ramirez and the shooting of Manuel Gomez. Following a jury trial, Bryant was convicted of first degree murder (count 1; Pen. Code,[1] § 187, subd. (a)), premeditated attempted murder (count 2; §§ 664/187, subd. (a)), two counts of assault with a semiautomatic firearm (counts 3 & 4; § 245, subd. (b)), discharging a firearm at an inhabited dwelling (count 5; § 246), and active participation in a criminal street gang (count 6; § 186.22, subd. (a)). Enhancements under section 12022.53, subdivisions (d) and (e)(1) applied to counts 1 and 2; enhancements under section 12022.7 applied to counts 2, 3, and 4; enhancements under sections 12022.5, subdivision (a) and 186.22, subdivision (b)(1) applied to counts 3 and 4; and an enhancement under section 12022.53, subdivisions (c) and (e)(1) applied to count 5. Bryant, a juvenile, was sentenced to an aggregate term of 82 years to life in prison, and the trial court imposed additional fines and fees.

Following that same trial, Hendrix was found guilty of second degree murder (count 1; § 187, subd. (a)), attempted murder (count 2; §§ 664/187, subd. (a)), two counts of assault with a semiautomatic firearm (counts 3 & 4; § 245 subd. (b)), discharging a firearm at an inhabited dwelling (count 5; § 246), and active participation in a criminal street gang (count 6; § 186.22, subd. (a)). Enhancements under section 12022.53, subdivisions (d) and (e)(1) applied to counts 1 and 2; enhancements under sections 12022.7 and 186.22, subdivision (b)(1) applied to counts 2, 3, and 4; an enhancement under 12022.5, subdivision (a) applied to counts 3 and 4; and an enhancement under section 12022.53, subdivisions (c) and (e)(1) applied to count 5. Hendrix was sentenced

---

[1]     Unless otherwise specified, all statutory references are to the Penal Code.

to an aggregate term of 72 years to life in prison, and the trial court imposed additional fines and fees.

On appeal, appellant Bryant argues that (1) there was insufficient evidence to support his sentencing enhancements for active gang participation, (2) the trial court abused its discretion by denying Bryant's motion to bifurcate the gang allegations from the remaining charges, (3) that Bryant's sentence violated the Eighth Amendment's prohibition of cruel and unusual punishment, and (4) there was insufficient evidence to establish that Bryant had acted with deliberation and premeditation.

Appellant Hendrix argues that (1) there was insufficient evidence to support Hendrix's conviction under the natural and probable consequences doctrine, (2) there was insufficient evidence to support his sentencing enhancements for active gang participation, and (3) that Hendrix's sentencing enhancements violated the Fifth Amendment's prohibition of double jeopardy. None of these arguments are persuasive, and the judgments will be affirmed.

## FACTS

On February 16, 2012, appellants Bryant and Hendrix sought out Jacob Ramirez, who lived in the apartment below the one that Bryant shared with his mother. Bryant was a juvenile and Hendrix was his uncle. Both Bryant and Hendrix were members of the West Side Crips.

During their search, Bryant and Hendrix aggressively questioned Ramirez's friends and family as to his whereabouts. Eventually, a friend of Ramirez's mother, Emanuel Gomez, went into the apartment to find him. Ramirez went outside, and shortly thereafter, Gomez saw the three men engaged in a fistfight. During the course of the fight, Bryant was knocked down and broke his jaw, while Bryant's mother, who was also on the scene, was knocked to the ground as well.

At that time, Gomez stepped in front of Ramirez and pushed him away from the fight. As he did so, however, Bryant fired several shots in their direction. Ramirez's

3.

mother testified that Bryant continued to shoot at Ramirez as Ramirez crawled on the ground. Of the shell casings recovered from the scene, one had struck the occupied apartment that Ramirez lived in, one had wounded Gomez, and another had struck Ramirez in the chest. Ramirez died from the gunshot wound on April 7, 2012.

When interviewed by the police, Bryant stated that the dispute with Ramirez stemmed from a marijuana purchase Bryant had made from Ramirez. Bryant stated that he had purchased $10 of marijuana from Ramirez, but had sought a refund. Bryant was subsequently charged in the shooting and Hendrix was charged as an accomplice. At the conclusion of trial, appellants were found guilty on all charges, though Hendrix was found guilty of second degree murder as a lesser included offense of first degree murder. This appeal followed.

## DISCUSSION

### I. There Was Substantial Evidence to Support Both Appellants' Sentencing Enhancements for Active Gang Participation.

#### A. Facts.

At trial, Hendrix stipulated to being a member of the West Side Crips. Bryant did not stipulate to any gang membership, but Officer Jeff Martin testified that Bryant had admitted to being a member of the West Side Crips to him on three previous occasions, while Officer Eric Littlefield testified that Bryant had admitted to being a member of the West Side Crips to him during a past interaction as well. Further, Officer Ryan Vaughan testified that other gang members had identified Bryant as a member of the West Side Crips.

The prosecution's expert witness on gang activity, Officer Isaac Aleman, testified that the West Side Crips were a street gang that engaged in "[s]hootings, murders, narcotic sales, robberies, burglaries, [and] carjacking." He further testified that "[r]espect and … reputation[]" within the gang and amongst other street gangs were among the most important things to a gang member. Aleman also testified that gang members were

4.

expected to support one another in a fight, and to "increase the level of violence in [a] fight so that they can win by whatever means necessary."  He testified that failure to do so would cause a gang member to lose respect within the gang, but that participating in shootings or other forms of violent crime would increase the level of respect the gang member had both within the gang and amongst rival gangs.

At the conclusion of trial, the jury found it to be true, under section 186.22, subdivision (b)(1), that Bryant and Hendrix committed their offenses "for the benefit of, at the direction of, or in association with [a] criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."  The jury's findings led to enhanced sentences for both men.

### B.      Standard of Review.

We view the record in the light most favorable to the conviction and presume the existence of every fact in support of the conviction the trier of fact could reasonably infer from the evidence.  (*People v. Maury* (2003) 30 Cal.4th 342, 396.).   "Reversal is not warranted unless it appears '''that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." [Citation.]'  [Citation.]" (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1457.)

### C.      Analysis.

#### 1. *There was sufficient evidence to establish that appellants committed their felonies in association with a criminal street gang*.

Under section 186.22, subdivision (b)(1), "any person who is convicted of a felony committed for the benefit of, at the direction of, or *in association with* any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" (italics added) is faced with a sentencing enhancement.  This association can be established if the "record support[s] a finding that defendants relied on their common gang membership and the apparatus of the gang in committing" their felonies. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

5.

Here, both Bryant and Hendrix assert that there was insufficient evidence to establish that they committed a felony "for the benefit of, at the direction of, or in association with any criminal street gang," as there was no evidence showing that the shootings in question were in any way gang related. Despite these claims, however, the evidence clearly shows that Bryant and Hendrix were fellow gang members who worked in tandem to locate, confront, and fight with Ramirez, and that the altercation ultimately concluded with Ramirez's murder.[2] Further, the prosecution's expert witness on gang activity testified that gang members were expected to assist one another in a fight, and to escalate the level of violence in an altercation in order to ensure victory. He further testified that doing such things would enhance a gang member's reputation both within the gang and amongst other gangs, and that respect and reputation are among "the most important things to a gang member."

In *People v. Albillar, supra,* 51 Cal.4th at pages 61-62, our Supreme Court found that a sentence enhancement under section 186.22, subdivision (b)(1) was justified if the offenders "not only actively assisted each other in committing [the] crimes, but their common gang membership ensured that they could rely on each other's cooperation in committing [the] crimes and that they would benefit from committing them together." Here, the evidence conclusively established that Bryant and Hendrix assisted one another in the commission of their crimes. The prosecution's expert testimony provided a sufficient evidentiary basis to conclude that, due to gang culture, Bryant and Hendrix could rely on one another's support during the attack on Ramirez, and that they would

---

[2]    Hendrix's argument that he was motivated by familial relationship rather than gang affiliation does nothing to affect this analysis. As noted by our Supreme Court in *People v. Albillar, supra,* 51 Cal.4th at page 62, "the jury, which was presented with the competing inferences, was entitled to credit the evidence that the [offense] … was gang related, not family related."

benefit from committing the attack together in the form of both increased likelihood of success and in enhanced respect within the gang and amongst rival gangs.

Therefore, as "[d]efendants not only actively assisted each other in committing these crimes, but their common gang membership ensured that they could rely on each other's cooperation in committing these crimes and that they would benefit from committing them together" (*People v. Albillar*, *supra,* 51 Cal.4th at pp. 61-62), we find that there was substantial evidence to support a finding that Bryant and Hendrix committed their crimes in association with a criminal street gang.

2. ***There was sufficient evidence to establish that appellants committed their felonies with the specific intent to assist a gang member in the commission of a crime.***

With regard to the second prong of section 186.22, subdivision (b)(1), the "[c]ommission of a crime in concert with known gang members is substantial evidence which supports the inference that the defendant acted with the specific intent to promote, further or assist gang members in the commission of the crime. [Citation.]" (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 322.) As the evidence showed that both Hendrix and Bryant were members of a criminal street gang and worked together to locate Ramirez, as well as fought alongside each other in the altercation that ultimately resulted in Bryant killing Ramirez, there was sufficient evidence to establish that both Bryant and Hendrix satisfied the second prong of section 186.22, subdivision (b)(1).

Therefore, viewing this evidence in the light most favorable to the conviction, it is clear that the jury's special findings under section 186.22, subdivision (b)(1) are supported by substantial evidence. Accordingly, neither appellant is entitled to relief.

**II.** **The Trial Court Did Not Abuse Its Discretion By Denying Bryant's Motion to Bifurcate the Gang Allegations From the Remaining Charges.**

**A.** **Facts.**

Prior to trial, Bryant filed a motion to bifurcate the gang allegations and charge of active participation in a criminal street gang from the other five crimes he was charged with. Following a hearing on the matter, the trial court denied Bryant's motion, finding that the prosecution's gang-related evidence was relevant to proving that the murder of Ramirez was a natural and probable consequence of Hendrix's assistance to Bryant, which was necessary to establish that Hendrix had vicarious liability for the murder of Ramirez and the attempted murder of Gomez.

The trial court also stated that bifurcating the trial could cause problems during jury selection, as the jurors would either not be questioned about their feelings toward street gangs prior to facing gang-related evidence in the second part of trial, or would be questioned about those feelings, but be faced with no gang-related evidence before rendering their first set of verdicts.

**B.** **Standard of Review.**

A trial court's decision on a motion to bifurcate trial is reviewed for an abuse of discretion. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1048.)

**C.** **Analysis.**

"[A] trial court has the discretion, in a jury trial, to bifurcate the determination of the truth of an alleged prior conviction from the determination of the defendant's guilt of the charged offense." (*People v. Calderon* (1994) 9 Cal.4th 69, 72.) Further, "bifurcation of a prior conviction allegation also permits bifurcation of the gang enhancement." (*People v. Hernandez, supra,* 33 Cal.4th at p. 1049.) Gang enhancements, however, are treated differently than prior convictions for bifurcation purposes. "A prior conviction allegation relates to the defendant's *status* and may have no connection to the charged offense; by contrast, the criminal street gang enhancement

8.

is attached to the charged offense and is, by definition, inextricably intertwined with that offense." (*Id*. at p. 1048.)  Accordingly, "less need for bifurcation generally exists with the gang enhancement than with a prior conviction allegation." (*Ibid*.)

Here, Bryant asserts that the trial court erred by failing to bifurcate the gang-related aspects of his trial from the remaining charges.  The gang allegations, however, did not implicate any prior convictions and related directly to the prosecution's theory for why Bryant was armed and chose to escalate his fight with Ramirez from fisticuffs to firearms.  Similarly, the evidence of gang culture and the appellants' gang affiliation related directly to whether or not the murder of Ramirez and the attempted murder of Gomez were natural and probable consequences of Hendrix's decision to assist Bryant in confronting Ramirez.  As bifurcation is not necessary when the evidence supporting the gang enhancement would be admissible at a trial of guilt, the trial court did not err by declining to bifurcate the appellants' trial. (*People v. Hernandez*, *supra*, 33 Cal.4th at pp. 1049-1050.)

Moreover, even if the trial court had erred by denying Bryant's motion to bifurcate, the jury was properly instructed that the evidence of gang activity that was presented at trial was only to be considered for the limited purpose of deciding if the appellants had acted with the intent necessary to prove the gang-related crimes and enhancements, or that the appellants had a motive to commit the other charged crimes. As jurors are presumed to follow their instructions, any error in the trial court's decision to deny Bryant's motion to bifurcate was harmless. (*People v. Davenport* (1995) 11 Cal.4th 1171, 1210.)

Therefore, because the gang-related evidence that was presented at trial was relevant to the other charged offenses, the trial court did not abuse its broad discretion by denying Bryant's motion to bifurcate the gang allegations from the remaining charges.

**III. Bryant's Sentence Does Not Violate the Eighth Amendment's Prohibition of Cruel and Unusual Punishment.**

**A. Standard of Review.**

Questions of constitutional law are reviewed de novo. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1154.)

**B. Analysis.**

The Eighth Amendment's prohibition of cruel and unusual punishment precludes courts from sentencing juveniles in non-homicide cases to life without the possibility of parole. (*Graham v. Florida* (2010) 560 U.S. 48 [130 S.Ct. 2011, 2030].) In homicide cases, a trial court may only sentence a juvenile to life without the possibility of parole if it first gives consideration to "'the mitigating qualities of youth.'" (*Miller v. Alabama* (2012) ___ U.S. ___ [132 S.Ct. 2455, 2467].) Specifically, the sentencing court must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." (*Miller v. Alabama, supra,* 132 S.Ct. at p. 2469, fn. omitted.) Further, a sentence which does not make a juvenile offender eligible for parole until after the expiration of the juvenile's reasonable life expectancy is considered a sentence of life without the possibility of parole for Eighth Amendment purposes. (*Graham v. Florida*, *supra*, 130 U.S. at p. 2034.)

Here, the trial court sentenced Bryant to an aggregate term of 82 years to life, which would have made Bryant ineligible for parole until after his 99th birthday. Therefore, because Bryant's sentence was the equivalent of a term of life without the possibility of parole, the trial court was obligated to consider "the mitigating qualities of youth" before imposing such a harsh sentence. The record, however, shows that the trial court appears to have made no such special consideration.

Given these facts, without more, we would conclude Bryant's sentence must be reversed and remanded for reconsideration under *Miller*. (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1388-1392.) After Bryant was sentenced, however, the Legislature

10.

enacted section 3051, which provides that "any prisoner who was under 18 years of age at the time of his or her controlling offense" is entitled to a parole hearing after a statutorily defined period of time. (§ 3051, subd. (a)(1).) In cases such as Bryant's, where the controlling offense carried a sentence of 25 years to life, section 3051 requires a parole hearing to be held during the 25th year of incarceration. (§ 3051, subd. (b)(3).) The statute further requires that the hearing must provide a "meaningful opportunity for release." (§ 3051, subd. (e).)

Therefore, while Bryant was entitled to have his juvenile status considered before being sentenced to life without the possibility of parole, section 3051 has retroactively granted Bryant a meaningful opportunity for release during his 25th year of incarceration. As such, Bryant has not been sentenced to life without the possibility of parole, and his Eighth Amendment claim is moot.[3]

## IV. There Was Substantial Evidence to Support the Jury's Findings of Deliberation and Premeditation.

### A. Standard of Review.

We view the record in the light most favorable to the conviction and presume the existence of every fact in support of the conviction the trier of fact could reasonably infer from the evidence. (*People v. Maury*, *supra*, 30 Cal.4th at p. 396.) "Reversal is not warranted unless it appears '''that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." [Citation.]' [Citation.]" (*People v. Duran*, *supra*, 97 Cal.App.4th at p. 1457.)

---

[3] We note that our Supreme Court has granted review of a case that was decided upon similar reasoning in *People v. Saetern* (2014) 227 Cal.App.4th 1456, review granted October 1, 2014, S220790.

11.

## B.    Analysis.

Murder is of the first degree if it is "willful, deliberate, and premeditated[.]" (§ 189.)  Similarly, attempted murder carries a harsher penalty if it was "willful, deliberate, and premeditated[.]"  (§ 664, subd. (a).)  "A verdict of deliberate and premeditated first degree murder requires more than a showing of intent to kill. [Citation.]  'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance. [Citations.]"  (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.)  "The process of premeditation and deliberation does not require any extended period of time.  'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly....' [Citations.]"  (*People v. Mayfield* (1997) 14 Cal.4th 668, 767.)

On appeal, Bryant asserts that there was insufficient evidence to support the jury's finding that he had shot at Ramirez and Gomez with deliberation and premeditation.  The evidence presented at trial, however, showed that Bryant had been angrily seeking out Ramirez prior to the fatal fight, that Bryant was armed when he confronted Ramirez, and that Bryant fired upon Ramirez and Gomez after the combatants had been separated. Indeed, the evidence shows that Bryant continued to shoot at Ramirez as Ramirez crawled away from Bryant.  Further, the prosecution's expert witness testified that gang members often "increase the level of violence" in an altercation to avoid being defeated. Given this direct and circumstantial evidence, a rational jury could conclude that Bryant fired upon Ramirez and Gomez after a brief period of deliberation and premeditation.

In response to these facts, Bryant asserts that the evidence supports an interpretation that he shot at Ramirez and Gomez as an impulsive reaction to having his jaw broken by a much bigger man.  While it is true that the evidence presented at trial could support such an interpretation, it also supports an interpretation that Bryant sought out Ramirez for a physical altercation, and planned to use lethal force against him if

12.

necessary. As the jury concluded that the second interpretation was correct, and we defer to the finder of fact in the presence of sufficient evidentiary support, Bryant is not entitled to a reversal of his convictions for murder and attempted murder.

**V.      There Was Sufficient Evidence to Establish that the Shooting of Ramirez and Gomez was a Natural and Probable Consequence of Appellants' Confrontation with Ramirez.**

### A.      Standard of Review.

As previously set forth the substantial evidence standard of review applies.

### B.      Analysis.

An individual encouraging or facilitating the commission of a crime can be held criminally liable for the facilitated crime and any other offense that was a natural and probable consequence of the facilitated crime. (*People v. Prettyman* (1996) 14 Cal.4th 248, 260.) In order to find a defendant liable of a related offense, the trier of fact must establish the following:

> "[W]hether the defendant (1) with knowledge of the confederate's unlawful purpose, and (2) with the intent of committing, encouraging, or facilitating the commission of any target crime(s), (3) aided, promoted, encouraged, or instigated the commission of the target crime(s); whether (4) the defendant's confederate committed an offense *other than* the target crime(s); and whether (5) the offense committed by the confederate was a natural and probable consequence of the target crime(s) that the defendant encouraged or facilitated." (*Id*. at p. 267.)

Here, the evidence presented at trial showed that Hendrix assisted Bryant, a fellow gang member, by "aggressively" questioning Ramirez's friends about Ramirez's whereabouts, and that Hendrix was present when Bryant confronted Ramirez. The evidence also showed that Hendrix fought alongside Bryant in the fistfight that immediately preceded Ramirez's murder. In fact, Hendrix does not dispute on appeal that he assisted Bryant in the fight with Ramirez, only that the shootings that followed were a natural and probable consequence of that fight. Further, the prosecution's expert on gang activity testified that gang members were expected to increase the level of

13.

violence in a confrontation in order to avoid defeat, even if it meant the use of deadly force.

Looking at this evidence in the light most favorable to the conviction, a reasonable trier of fact could determine that Hendrix had knowledge of Bryant's unlawful purpose prior to the confrontation with Ramirez, and that Hendrix both intended to facilitate Bryant's unlawful purpose and did in fact assist Bryant in committing, at minimum, assault. The facts also show that Bryant not only assaulted Ramirez, but killed him outright. Accordingly, the first four conditions for vicarious liability under the doctrine of natural and probable causes were supported by substantial evidence.

On appeal, however, Hendrix asserts that the target crime was a simple assault, and that there was no evidence that Hendrix knew that Bryant was armed or what Bryant planned to do with the weapon. This argument misses the point. Whether Hendrix knew that Bryant intended to kill Ramirez is irrelevant; all that matters is that Hendrix intentionally assisted Bryant in the commission of a crime, and that Ramirez's murder was the natural and probable consequence of the crime Hendrix intended to facilitate. Indeed, in *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 300, our Supreme Court held that, as a matter of law, simple assault could serve as the target offense in a murder case pursued under the natural and probable consequences doctrine.

In fact, in *People v. Medina* (2009) 46 Cal.4th 913, 921, our Supreme Court held that an individual need not be aware that his accomplice is armed in order for vicarious liability to attach under the natural and probable consequences doctrine. Moreover, in *Medina*, the Court cited expert witness testimony on the importance of respect and the escalation of violence in gang culture as substantial evidence of murder being a natural and probable consequence of a fistfight involving gang members. (*Id*. at pp. 922-923.)

While, unlike this case, the victim in *Medina* was a rival gang member, the Court's logic is thoroughly applicable to the instant case. When discussing whether an escalation to lethal force was foreseeable in *Medina*, the Court held as follows:

14.

"[T]here was more here than just verbal challenges by gang members.… There was evidence that [the victim] refused to succumb to the gang assault despite being substantially outnumbered and defendants were unable to avenge themselves because of [the victim's] show of strength; gang culture (in which defendants were involved) emphasizes respect, fear, and retaliatory violence in the face of disrespectful behavior; [the assailants' gang] was a violent street gang that regularly committed gun offenses; and a … gang member had ready access to a gun at the scene. Even if the three aggressors did not intend to shoot [the victim] when they verbally challenged him, or at the start of the fistfight, it was or should have been reasonably foreseeable to these gang members that the violence would escalate even further depending on [the victim's] response to their challenge. [Citations.]" (*People v. Medina, supra,* 46 Cal.4th at p. 927.)

Here, as in *Medina*, Ramirez refused to succumb to a gang assault despite being outnumbered, and Bryant and Hendrix belonged to a gang with a history of gun offenses. Given Bryant and Hendrix's involvement in gang culture, it was reasonably foreseeable that the level of violence would escalate in the event that they were unable to defeat Ramirez through purely physical force.

Therefore, not only was there sufficient evidence for the jury to conclude that Hendrix intentionally assisted Bryant in confronting Ramirez with the intent to commit assault, but a rational trier of fact could also conclude that murder is a natural and probable consequence of a gang-related assault. Accordingly, there was sufficient evidence to support Hendrix's convictions for murder and attempted murder.

## VI. Hendrix's Sentence Enhancements Do Not Violate the Fifth Amendment's Prohibition of Double Jeopardy.

### A. Standard of Review.

As previously set forth constitutional questions are reviewed de novo.

### B. Analysis.

The double jeopardy clause of the Fifth Amendment includes protection against having multiple punishments for the same offense imposed in a single proceeding. (*Jones v. Thomas* (1989) 491 U.S. 376, 381.) However, this protection is "limited to ensuring that the total punishment [does] not exceed that authorized by the legislature."

15.

(*United States v. Halper* (1989) 490 U.S. 435, 450.)  Indeed, "[f]ederal law, like California statutory law, clearly recognizes that cumulative punishment may be imposed under two statutes, even where they proscribe the same conduct, if the Legislature has specifically authorized cumulative punishment.  [Citation.]"  (*People v. Sloan* (2007) 42 Cal.4th 110, 121.)

Here, Hendrix contends that his Fifth Amendment rights were violated by the trial court's application of the sentencing enhancement found in section 12022.53, subdivision (d) to his sentence for second degree murder.  According to Hendrix, adding that enhancement to his murder conviction imposed multiple punishments for the same offense within a single proceeding. This argument, however, fails to adequately address the fact that the enhancement explicitly requires that the trial court impose an additional and consecutive term of imprisonment to the sentence for the underlying offense.

By way of demonstration, section 12022.53, subdivision (a)(1) states that section 12022.53 applies to murder convictions, and section 12022.53, subdivision (d) states that "[n]otwithstanding any other provision of law," any person who commits an applicable felony and "personally and intentionally discharges a firearm and proximately causes great bodily injury ... or death ... shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life."  Further, section 12022.53, subdivision (e)(1) provides that a principal is vicariously liable for the firearm use of an accomplice if the accomplice violated subdivision (d) and the principal committed the applicable felony for the benefit of a criminal street gang.

Here, while Hendrix did not personally discharge a firearm during the commission of a murder, his accomplice did, and the crime was found to be committed for the benefit of a criminal street gang.  Accordingly, Hendrix is vicariously liable under section 12022.53, subdivision (e)(1) for the sentence enhancement in subdivision (d), which mandates that "[n]otwithstanding any other provision of law," Hendrix "be punished by an additional and consecutive term of imprisonment[.]"  (§ 12022.53, subd. (d).)

16.

Therefore, because the Legislature specifically authorized cumulative punishment where the discharge of a firearm causes death, Hendrix's sentence enhancement did not violate his right to be free from double jeopardy and he is not entitled to relief.

**DISPOSITION**

The judgments are affirmed.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
CORNELL, J.


_____
KANE, J.

17.

**KANE, J.**

If it were not for the compelling authority of *People v. Albillar* (2010) 51 Cal.4th 47, 61-62, I would reverse the gang enhancement finding under Penal Code section 186.22 (b)(1). Inasmuch as I am bound by that decision, I concur in the opinion and decision of this court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

The evidence that these defendants were gang members and committed a crime together is not enough to establish that the crime was gang related. The prosecutor's gang expert's testimony that gang members can rely on other gang members' support during the commission of a crime and earn enhanced respect within the gang for committing such crimes does not, in my view, satisfy the statutory requirement that the crime be committed "for the benefit of, at the direction of, or in association with any criminal street gang." (Pen. Code, § 186.22, subd. (b)(1).) The gang expert's testimony is a general statement about common gang behavior and activity. It does not, however, constitute evidence about whether this crime was in fact gang related, that is, was committed for the benefit or, at the direction of, or in association with any criminal street gang.

 

                                          _____

                                              Kane, J.

I CONCUR:

_____
Cornell, J.