Filed 6/18/15  P. v. King CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>            v.<br><br>MARIO KING,<br><br>      Defendant and Appellant. | F067363<br><br>(Super. Ct. No. MF010145A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. Michael E. Dellostritto and Thomas S. Clark, Judges.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellant Mario King of one count of making a criminal threat. In a bifurcated proceeding, the trial court found a prior conviction allegation to be true. He was sentenced to a term of seven years eight months in prison.

King makes several challenges to his conviction. He contends (1) there was insufficient evidence to support his conviction, (2) the trial court erred by refusing to reduce his conviction to a misdemeanor, (3) the trial court erred by refusing to dismiss the prior conviction allegation, (4) the trial court improperly delegated the task of calculating victim restitution to the probation department, and (5) his restitution and parole revocation fines were not authorized by law. He also asks that we review the sealed transcripts of the trial court's in camera review of the correctional officers' personnel files to determine if all *Pitchess*[1] material was disclosed properly. We affirm the judgment in all respects.

## FACTUAL AND PROCEDURAL SUMMARY

On February 24, 2012, King was an inmate at Tehachapi State Prison serving a life sentence. On that date Correctional Officers Kirk Acosta and David Clark conducted a random search of King's cell. After the search, King argued with Acosta over the reasons for the search and told Acosta, "all it would take is a phone call or a letter to my people to get at you." Acosta asked King what he meant, and King replied that he was already serving a life sentence and had "nothing to lose." Acosta notified his unit sergeant of the incident.

The prosecution filed an information on July 30, 2012, charging King with one count of making a criminal threat. (Pen. Code, § 422).[2] The information also alleged

---

[1]*Pitchess v. Superior Court* (1974) 11 Cal.3d. 531. The California Legislature codified the privileges and procedures set out in *Pitchess* through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81.)

[2]All further statutory references are to the Penal Code unless otherwise stated.

that King was not eligible to be sentenced to county jail and that he had a prior violent felony conviction.  (§§ 1170, subds. (f) & (h)(3), 667, subd. (a).)

**DISCUSSION**

## I.      Sufficiency of the Evidence

King argues that the evidence presented at trial was insufficient to support his conviction.  We disagree.

When reviewing a claim of insufficient evidence, we view the record in the light most favorable to the conviction and presume the existence of every fact in support of the conviction the trier of fact reasonably could infer from the evidence.  (*People v. Maury* (2003) 30 Cal.4th 342, 396.)  "Reversal is not warranted unless it appears '"that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].""'  (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1457.)

In order to find a defendant guilty under section 422, the prosecution must prove (1) the defendant "willfully threatened to commit a crime which if committed would result in death or great bodily injury," (2) the defendant "made the threat with the specific intent that the statement be taken as a threat," (3) "the threatening statement, on its face and under the circumstances in which it was made, was so unequivocal, unconditional, immediate and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat," and (4) "the threatening statement caused the other person reasonably to be in sustained fear for his [or her] own safety [or for his or her immediate family's safety], regardless of whether appellant actually intended to carry out the threat."  (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1536 (*Melhado*).)

Here, King maintains that the expression "all it would take is a phone call or a letter to my people to get at you" is vague.  And, given King's life sentence and the 25 years he already had been incarcerated, there was no realistic prospect that King would harm Acosta personally, or have contacts outside the prison who would be willing to harm Acosta.  Accordingly, King claims that his words were not "so unequivocal,

3.

unconditional, immediate and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat." (*Melhado*, *supra*, 60 Cal.App.4th at p. 1536.) This argument, however, views the evidence most favorably to the defense, not the conviction.

At trial, the evidence established King was serving a sentence for second degree murder, and that inmates frequently gained access to smuggled cell phones that allowed them to make unmonitored calls to people outside of the prison. Acosta testified that he (1) interpreted King's statement as a threat that King's associates would assault him outside the prison, (2) feared for his safety, and (3) ensured that his family was trained in the use of firearms as a response to King's statements. Further, while King claims he merely was venting his frustration due to a prior improper seizure of his personal property, Acosta testified that he had been yelled at "[h]undreds" of times during his five years as a correctional officer but had never felt threatened until the events underlying this case. Viewing this evidence in the light most favorable to the conviction, there was sufficient evidence to establish that King's statement was "unequivocal, unconditional, immediate and specific" enough to convey to Acosta "an immediate prospect of execution of the threat," and caused Acosta to feel reasonable, sustained fear for his safety and the safety of his family. (*Melhado*, *supra*, 60 Cal.App.4th at p. 1536.)

Similarly, we observe that King's statement, while not graphically detailed, was suitably specific to represent the threat of death or serious bodily injury and to establish that King intended his words to be interpreted as such by Acosta, particularly in light of King's followup statement that he had "nothing to lose" due to his incarceration. Therefore, given the evidence presented at trial, we find all four elements of the charged offense were supported by sufficient evidence, and King is not entitled to relief.

## II.    Request to Reduce the Offense to a Misdemeanor

Prior to sentencing, King requested that the trial court reduce his offense to a misdemeanor pursuant to section 17, subdivision (b). The trial court denied the request,

citing King's criminal history and the circumstances of the offense. King now contends the trial court erred by declining to reduce his conviction to a misdemeanor. We disagree.

A violation of section 422 is considered a "wobbler" offense, as the trial court has the discretion to sentence the crime as either a felony or a misdemeanor. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 974.) In determining whether to exercise this discretion, the trial court should consider "'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' [Citations.] When appropriate, judges should also consider the general objectives of sentencing such as those set forth in California Rules of Court, rule [4.410]." (*Id*. at p. 978.) "We will not disturb the court's decision on appeal unless the party attacking the decision clearly shows the decision was irrational or arbitrary." (*People v. Sy* (2014) 223 Cal.App.4th 44, 66 (*Sy*).)

Here, the trial court specifically noted King's criminal history and the circumstances of his current offense when denying King's motion to reduce the offense to a misdemeanor. Additionally, the trial court extensively weighed the factors in mitigation and aggravation when determining King's final sentence. The record thus demonstrates a reasoned, individualized exercise of discretion by the trial court at sentencing, and we cannot conclude that the trial court's decision was "irrational or arbitrary." (*Sy*, *supra*, 223 Cal.App.4th at p. 66.) King is not entitled to relief.

## III.    Motion to Dismiss Prior Conviction

Prior to sentencing, King filed a motion to dismiss his prior strike, a second degree murder conviction from 1989. The trial court denied the motion, stating the violent nature of King's prior conviction and his current conviction brought him "within the spirit of the three strikes law." King contends that the trial court's ruling was an abuse of

discretion, as over 25 years had passed between King's murder conviction and current conviction. We disagree.

Under section 1385, subdivision (a), a trial court may dismiss a prior strike conviction for sentencing purposes if the defendant falls outside the spirit of the three strikes law. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) When doing so, the trial court "must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Ibid*.)

We review a court's decision on a motion to dismiss a prior strike for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373 (*Carmony*).) The burden is on the party attacking the sentence to show that the decision was "so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.) "Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

Here, the trial court denied King's motion after weighing the seriousness of his crimes against the prolonged gap between the offenses. In reaching its conclusion, the trial court noted King's prior strike was remote in time, but that his prior and current offenses were both serious felonies of a violent nature. Given this record, we conclude the trial court's decision was not "irrational or arbitrary," but rather was based on the trial court's balancing of the relevant facts of King's particular case. (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

While it is true that King had not committed an offense in the 25-year period of incarceration that followed his murder conviction, the nature and circumstances of King's

offenses provided a compelling basis for the trial court's conclusion that he did not fall outside of the spirit of the three strikes law. The three strikes scheme is "designed to increase the prison terms of repeat felons." (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 504.) There would seem to be no more emblematic situation for the scheme's enforcement than the case of a violent felon who commits another violent felony while still imprisoned for the first violent felony. Accordingly, we conclude the trial court did not abuse its discretion by denying King's motion to dismiss his prior strike.

## IV. Calculation of Victim Restitution

At sentencing, the trial court ordered King to "pay restitution pursuant to Penal Code Section 1202.4(f) in an amount to be determined by the probation department at the direction of the Court to Officer Kirk Acosta for losses incurred, if any." King argues the trial court's order impermissibly delegated the determination of the amount of victim restitution. We disagree.

Section 1202.4, subdivision (f) states, in relevant part: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. *If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court.*" (Italics added.)

Here, as reflected by the trial court's order, the amount of loss suffered by Acosta, if any, was unknown at the time of sentencing. Therefore, under the plain language of section 1202.4, subdivision (f), the trial court was required to order the amount of restitution to be determined at the direction of the court. By ordering restitution "in an amount to be determined by the probation department at the direction of the Court," the trial court complied with the statutory requirements of section 1202.4, subdivision (f) in

7.

all respects. (See *People v. Lunsford* (1998) 67 Cal.App.4th 901, 903 [order directing restitution "be paid by the defendant in an amount to be determined by the Office of Revenue Reimbursement" complied with § 1202.4, subd. (f)].) Hence, King is not entitled to relief.

## V. Fines

At sentencing, the trial court assessed a restitution fine and a parole revocation fine of $280. At that time, $280 was the minimum allowable fine under sections 1202.4 and 1202.45. At the time of the commission of the crime, however, the minimum fine allowable under sections 1202.4 and 1202.45 was $240. (§§ 1202.4, subd. (b)(1) & 1202.45, subd. (a).) King claims the trial court clearly intended to assess the minimum fine and, as the controlling law in his case is the law at the time the crime was committed, the trial court's assessment amounted to an unauthorized ex post facto sentence. We disagree.

"The Constitution forbids the passage of ex post facto laws, a category that includes '[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'" (*Peugh v. United States* (2013) 569 U.S. ___, ___ [133 S.Ct. 2072, 2077-2078]; see *Collins v. Youngblood* (1990) 497 U.S. 37, 41-42.) "[T]he imposition of restitution fines constitutes punishment, and therefore is subject to the proscriptions of the ex post facto clause and other constitutional provisions." (*People v. Souza* (2012) 54 Cal.4th 90, 143.) Thus, a defendant is entitled to remand if a trial court imposes a restitution order by applying the law of restitution in effect at the time of sentencing, rather than the law applicable at the time the crime was committed. (*Ibid*.)

A sentence, however, "is generally 'unauthorized' where it could not lawfully be imposed *under any circumstance in the particular case*." (*People v. Scott* (1994) 9 Cal.4th 331, 354 (*Scott*), italics added.) Here, the plain language of section 1202.4 that was in effect when King made his criminal threat explicitly required the trial court to set

8.

the restitution fine at "[no] less than two hundred forty dollars," and "not more than ten thousand dollars." (*Id.*, subd. (b)(1).) Similarly, the plain language of section 1202.45 required the trial court to set the parole revocation fine "in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4." (*Id.*, subd. (a).) Accordingly, the trial court lawfully could issue restitution and parole revocation fines in the amount of $280 under the controlling law in King's case. As such, the fines were not unauthorized by law. Nor were they violations of the ex post facto clause.

Further, even if King had established the trial court erred in setting the amount of the fines, the argument has been forfeited, as King did not object at sentencing. "[C]laims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" are forfeited when they are raised for the first time on appeal. (*Scott, supra,* 9 Cal.4th at p. 353; accord, *People v. Smith* (2001) 24 Cal.4th 849, 852.) While this forfeiture rule does not apply to unauthorized sentences, King's fines were within the range authorized by the controlling sections of the Penal Code. (*Smith,* at p. 852.) As such, the fines were authorized by law and King is not entitled to relief.

## VI. The Trial Court Released All Relevant *Pitchess* Material

Prior to trial, King filed a *Pitchess* motion seeking the disclosure of any materials within Acosta's personnel file relating to "complaints of: (1) dishonesty; (2) violation of search protocols; (3) harassment; (4) retaliation against inmate complaints or grievances; (5) abuse of the power or trust of official capacity; (6) instigating or soliciting inmate violence; (7) interfering with [the] ability of inmates to file complaints or grievances; (8) taunting inmates for filing complaints or grievances; [and] (9) malicious prosecution." The motion also sought the disclosure of any materials within Clark's personnel file relating to "complaints of: (10) dishonesty; (11) violation of search protocols; (12) harassment; [and] (13) retaliation against inmate complaints or grievances."

The trial court granted King's motion, and, after an in camera review of Acosta's and Clark's personnel files, released the name and contact information of Zachary Glenn, another inmate who had lodged a complaint against Acosta.

King requests that we review the in camera proceedings to determine if the trial court followed appropriate procedures and released all relevant *Pitchess* material. Having examined the sealed record, we conclude that the trial court reviewed all relevant files and adequately stated the contents of those files for the record. We also conclude the trial court ordered the release of all relevant material when it disclosed Glenn's name and contact information to the parties. Accordingly, King is not entitled to any further relief.

**DISPOSITION**

The judgment is affirmed.

_____
CORNELL, Acting P.J.


WE CONCUR:


_____
GOMES, J.


_____
SMITH, J.