Filed 1/26/23  P. v. Ponce CA1/3
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ADRIAN JOSEPH PONCE,<br><br>    Defendant and Appellant. | A155368<br><br>(Contra Costa County<br>Super. Ct. No. 51702232) |

A jury found defendant Adrian Joseph Ponce guilty of several offenses, including possession of heroin and methamphetamine for sale, and possession of a controlled substance while armed with a firearm.  (Health & Saf. Code, §§ 11351, 11370.1, subd. (a), 11378.)  It also found Ponce committed these offenses "for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members" — i.e., a gang enhancement.  (Pen. Code,[1] former § 186.22, subd. (b)(1); *People v. Ponce* (Mar. 11, 2021, A155368) [nonpub. opn.], review granted June 9, 2021 and cause remanded Nov. 16, 2022, S267898 (*Ponce*).)

Ponce appealed, arguing the evidence was insufficient to support the gang enhancements.  (*Ponce, supra*, A155368, rev. granted.)  This court

---

[1] Undesignated statutory references are to this code.

1

disagreed and affirmed.  (*Ibid.*)  But the California Supreme Court granted Ponce's petition for review and remanded the matter to this court with directions to vacate our decision and reconsider the cause in light of its decision in *People v. Renteria* (2022) 13 Cal.5th 951 (*Renteria*), which clarified how to apply the gang enhancement when a defendant is a lone actor rather than acting with other gang members.  Having now reconsidered Ponce's case in light of *Renteria*, we conclude substantial evidence supports the jury finding Ponce specifically intended to promote, further, or assist in any criminal conduct by gang members.

New ameliorative legislation that applies retroactively to Ponce nonetheless requires us to remand this case.  Assembly Bill No. 333 (2021–2022 Reg. Sess.) (A.B. 333) amended the section 186.22 gang enhancement elements for establishing the existence of a "criminal street gang" and "a pattern of criminal gang activity," and the People did not prove the elements since A.B. 333 was not in effect at the time of Ponce's jury trial. (Stats. 2021, ch. 699, §§ 1–5, eff. Jan. 1, 2022.)  Remand is necessary for a determination on whether the gang enhancement in light of these new elements applies here.  Ponce is also entitled to benefit from Assembly Bill No. 518 (2021–2022 Reg. Sess.) (A.B. 518), which conferred discretion on the trial court to select any applicable term of imprisonment — rather than the longest term possible — when two or more offenses provide punishment for the same criminal transaction.  (Stats. 2021, ch. 441, § 1, eff. Jan. 1, 2022.) In all other respects, we affirm the judgment.

## BACKGROUND

In 2017, police arrested Ponce's brother, Raymon Ponce, after a search of his car revealed drug paraphernalia, a significant amount of cash, and bullets.  (*Ponce, supra*, A155368, rev.gr.)  As part of its investigation of

Raymon, police searched Ponce's house in January 2017, discovering a .22-caliber rifle, ammunition, a loaded handgun, $69,000 in cash, one pound of heroin, and more than one pound of methamphetamine, i.e., a quantity greater than the amount a drug user would usually possess. (*Ibid.*) Moreover, there was no paraphernalia for heroin use, such as syringes or straws, further indicating the drugs were possessed for sale. In addition, police found numerous articles of red clothing — a color associated with the Norteño gang — and a flag with a *huelga* bird logo — a symbol adopted by the Norteño gang. (*Ibid.*) In the kitchen was a Vitamix blender, empty clear plastic bags, and a digital scale. These goods, police later explained, were useful for cutting and mixing drugs as well as packaging the drugs in smaller portions for sale.

In Ponce's bedroom closet, the police found a shoebox containing money orders and letters addressed to him from known, incarcerated Norteño members, and letters from Norteño members thanking Ponce for sending them money. (*Ponce, supra*, A155368, rev.gr.) Police discovered a phone charger inscribed in red ink with "XIV" and "CAL." CAL is an acronym for "Crazy Ass Latinos," a subset of the Norteño gang operating in Antioch, Brentwood, and Oakley, and engaging in criminal activity, such as robbery, drug sales, and prostitution. The activities make money for CAL. And CAL uses the same signs and symbols as the Norteño gang — the *huelga* bird, the roman numeral XIV, and the color red.

Relevant here, Ponce was charged with possession of heroin for sale (Health & Saf. Code, § 11351, count one); possession of methamphetamine for sale (*Id.*, § 11378, count two); possession of two firearms following a violent felony conviction (former § 29900, subd. (a)(1), counts four and five); and possession of heroin and methamphetamine while armed with a loaded,

3

operable firearm (Health & Saf. Code, § 11370.1, subd. (a), count six). The indictment alleged weapon enhancements for counts one and two, as well as a gang enhancement for counts one, two, and six. (§§ 12022, subd. (c); 186.22, subd. (b)(1)(A).)

During Ponce's jury trial, Detective Souza testified as an expert on the Norteño gang. (*Ponce*, *supra*, A155368, rev.gr.) His job entailed working on the Federal Bureau of Investigation's "Safe Streets Task Force" and overseeing "Omega Red," an operation that attempted to disrupt Norteño gang activities and included wiretapping its members. Souza discussed a 2018 jail phone call between Ponce and Raymon, who had a CAL tattoo and had been arrested with other Norteño members. Ponce and his brother discussed an inmate named "Mando," who police believed to be Amando Amaro, a target of the Omega Red investigation. Amaro had a CAL tattoo, and Ponce was recorded expressing his desire to be Amaro's cellmate. According to Souza, Norteño gang members generally favor being housed with other Norteño members rather than rival gang members. During the phone call, Ponce also noted Robert Wickham, a known CAL gang member, referred to Ponce as "OG" — a term used to identify an older gang member.

Detective Souza also analyzed an August 2016 phone call between Ponce and J.Q., a convicted Norteño drug dealer. (*Ponce*, *supra*, A155368, rev.gr.) J.Q. made several statements indicating he owed Ponce a drug debt; they discussed an arrangement for Ponce to supply J.Q. with more drugs for sale. In response to J.Q.'s statements that he was having difficulties repaying, Ponce stated "I am fucking struggling too. All these people got locked up with my shit." J.Q. suggested he could start selling drugs right away, and he could repay Ponce in small dollar increments ultimately totaling $1,000. Souza testified this conversation took place shortly after

4

several Norteño members were arrested as part of the Omega Red operation, suggesting the reference to "people [who] got locked up" was to other Norteño members who had drugs supplied by Ponce. According to Souza, the gang provided a "built-in way to distribute the drugs through other gang members."

Detective Souza opined Ponce's offenses — possession of heroin and methamphetamine for sale, and of a controlled substance with a firearm — were committed for the benefit of or in association with the Norteño gang. According to Souza, Ponce communicated with Norteño drug dealers, and Ponce was likely their drug source based on the large quantities of drugs found in his house. Revenue could be used to acquire weapons, fund incarcerated members' lifestyles, and acquire more drugs to enhance drug enterprise profits.

The jury found Ponce guilty of the charged offenses and found true the gang and firearm enhancements. The court sentenced Ponce to 13 years in prison.

## DISCUSSION

Ponce makes a series of challenges to his conviction and sentence, arguing there is insufficient evidence to support the gang enhancement, and recent legislation regarding gang enhancements and sentencing require reversal. We address each contention below.

## I.

Ponce contends there was insufficient evidence to prove he committed his possession offenses with the specific intent to promote, further, or assist criminal conduct by gang members, and his gang enhancements must be reversed. We disagree.

5

When considering a challenge to the sufficiency of the evidence to support a gang enhancement, we review the entire record to determine whether it discloses substantial evidence — "that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60.) We do not reweigh the evidence or reassess witness credibility, but instead presume the existence of every fact in support of the judgment that the jury could have reasonably deduced from the evidence. (*Id.*, at p. 60.) Reversal "is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Ibid.*)

Section 186.22 prescribes enhanced punishment for "gang-related conduct, i.e., felonies committed with the specific intent to benefit, further, or promote the gang." (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1138.) The enhancement has two prongs. First, the underlying felony must be committed for the benefit of, at the direction of, or in association with any criminal street gang — that is, the crime was gang-related. (*People v. Perez* (2017) 18 Cal.App.5th 598, 606–607; § 186.22, subd. (b)(1).) Second, the felony must be committed "with the specific intent to promote, further, or assist in criminal conduct by gang members." (§ 186.22, subd. (b)(1).) The defendant need not "act with the specific intent to promote, further, or assist a *gang*; the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members*." (*People v. Albillar, supra,* 51 Cal.4th at p. 67.)

"Not every crime committed by an individual gang member is for the gang's benefit or to promote criminal conduct by gang members." (*Renteria, supra,* 13 Cal.5th at p. 957.) "[G]ang members can, of course, commit crimes

6

for their own purposes." (*Ibid*.) In cases where other gang members jointly participate in the underlying offense, the specific intent prong is "generally shown by proof of criminal conduct undertaken in concert with other gang members." (*Id*. at p. 965.) *Renteria* clarified how to apply the gang enhancement when a defendant acts alone — that is, when no other gang members are involved in the underlying offense. (*Id*. at pp. 965–966.) "Two features of the intent requirement are particularly relevant in lone-actor prosecutions." (*Id*. at p. 965.) First, "a defendant facing sentence enhancement allegations for a gang-related felony under section 186.22(b) must at least be aware of the type of criminal activity the gang members pursue." (*Ibid*.) Second, "[b]ecause the showing of intent must include the intent to promote criminal activity *by others*, in a lone-actor case this necessarily means an intent to promote criminal activity other than the charged offense." (*Id*. at p. 966, italics added.)

The record contains sufficient evidence to prove both prongs of section 186.22. The first prong — whether the offenses were committed for the benefit of, or in the association with, a criminal street gang — needn't detain us long, as Ponce does not seriously contest the sufficiency of the evidence in support of that element. Nor can he. Among other evidence, Detective Souza testified that Ponce was a Norteño gang member based on the items found in Ponce's home, including red clothing, the *huelga* flag, correspondence with incarcerated Norteño members, and a phone charger inscribed in red with CAL and XIV. Ponce's phone call with J.Q., a convicted Norteño drug dealer, evidenced Ponce's role as a drug supplier to other Norteño members. And Souza also testified the drug sales provides the gang with revenue to assist members while in prison as well as to purchase more drugs and weapons.

7

Indeed, letters from known, incarcerated Norteño members containing money orders or thanks for supplying the gang members with funds were found in Ponce's house. (*Ponce, supra*, A155368, rev.gr.) Given this evidence, a reasonable jury could conclude Ponce's offenses were committed for the benefit of or in association with the Norteño gang.

We turn to the second prong — whether the felony was committed with the specific intent to promote, further, or assist in any criminal conduct by gang members. Ponce contends that, as in *Renteria*, he acted alone during his offenses. Even assuming that is so, there is substantial evidence in the record from which a reasonable jury could conclude Ponce acted with the requisite intent to promote criminal activity other than the charged offense. (*Renteria, supra*, 13 Cal.5th at pp. 965–966.)

Ponce was indisputably aware Norteño gang members sold drugs. (*Renteria, supra*, 13 Cal.5th at p. 965.) His gang involvement was both current and extensive. (*Id.* at p. 972 [jury can infer defendant intended to promote criminal activities of gang members through evidence demonstrating the degree of defendant's involvement with the gang].) A known member of CAL referred to Ponce as OG, meaning an elder member of the gang. More importantly, the phone call between Ponce and J.Q. demonstrated Ponce regularly supplied Norteño members — including J.Q. — with drugs to sell. During the call, Ponce stated "[a]ll these people got locked up with my shit." Presuming the existence of every fact in favor of the judgment, and in light of Souza's testimony that the statement was made shortly after the arrest of a large number of Norteño members, Ponce's statement could reasonably be interpreted as acknowledging he had provided other gang members with drugs to sell. And the Vitamix blender, empty clear plastic bags, and a digital

8

scale in Ponce's home all indicated he intended to cut, mix, and package his drugs into smaller portions for gang members to sell. (*Renteria*, at p. 966.)

Ponce's attempt to diminish the significance of his August 2016 phone call with J.Q. is unpersuasive. Relying on *Renteria*, he contends the call lacked any temporal proximity to his January 2017 possession offenses and thus fails to demonstrate he specifically intended his offenses to promote criminal activity of Norteño members. We disagree. In *Renteria,* the court rejected the prosecution's argument that defendant's walking with a group of gang members earlier in the night evidenced defendant's later shooting of two inhabited houses "to be attributed to the gang." (*Renteria, supra,* 13 Cal.5th at p. 971.) Here, by contrast, Ponce engaged in an *ongoing* scheme to supply Norteño members with drugs for sale. As Detective Souza testified, the Norteño gang provided a structure to distribute drugs through their members. (*Ponce, supra*, A155368, rev.gr.) And reasonably inferred, Ponce supplied incarcerated Norteño members with revenue from those sales. Moreover, during the phone call, Ponce referred to the recent arrest of other members he had also supplied with drugs. Ponce then discussed supplying J.Q. with more drugs. A reasonable jury could conclude Ponce was supplying J.Q. — and other gang members — with drugs on an ongoing basis, and that Ponce's current offenses were similarly intended. (*People v. Miranda* (2011) 192 Cal.App.4th 398, 411 ["[t]here is rarely direct evidence that a crime was committed for the benefit of a gang," we draw inferences about intent from " 'the predictable results of action' "].) Viewing the record in its entirety, there was sufficient evidence Ponce committed his offenses "with the specific intent to benefit, further, or promote the gang." (*People v. Rodriguez, supra,* 55 Cal.4th at p. 1138.)

9

## II.

The parties agree A.B. 333, legislation passed while Ponce's appeal was pending which significantly modifies the requirements to prove a gang enhancement under section 186.22, requires reversal and remand. (Stats. 2021, ch. 699, eff. Jan. 1, 2022.) We agree.

Under former section 186.22, the existence of a "criminal street gang" was established by having (1) an ongoing association of three or more persons with a common name, identifying symbol or sign; (2) one of the group's primary activities is committing one or more statutorily enumerated criminal offenses; and (3) the members individually or collective engage or have engaged in a pattern of criminal gang activity. (Former § 186.22, subd. (f); *People v. Duran* (2002) 97 Cal.App.4th 1448, 1457.) A "pattern of criminal gang activity" was established by evidence the persons associated with the gang committed two or more predicate offenses within a three-year period after a prior offense and the offenses were committed on separate occasions or by two or more persons on the same occasion. (Former § 186.22, subd. (e); *Menifee v. Superior Court* (2020) 57 Cal.App.5th 343, 362.)

A.B. 333 narrowed the definition of "criminal street gang" to "an ongoing, *organized* association or group of three or more persons, whether formal or informal," whose members "*collectively* engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f), as amended by Stats. 2021, ch. 699, § 3, italics added.) It increased the burden of proof by "alter[ing] the requirements for proving the 'pattern of criminal gang activity' necessary to establish the existence of a criminal street gang." (*People v. Lopez* (2021) 73 Cal.App.5th 327, 345; § 186.22, subd. (e), as amended by Stats. 2021, ch. 699, § 3.) For the predicate offenses used to demonstrate

10

a pattern of criminal gang activity, at least one predicate offense must have occurred within three years of the prior predicate offense, but also within three years of the currently charged offense. (§ 186.22, subd. (e), as amended by Stats. 2021, ch. 699, § 3.) In addition, the predicate offenses must have been committed on separate occasions or by two or more members, and the offenses commonly benefitted a criminal street gang. (*Ibid*.) Under the amendments, the common benefit must be more than reputational in nature, such as financial gain or retaliation. (§ 186.22, subd. (g), as amended by Stats. 2021, ch. 699, § 3.) These ameliorative changes, increasing the threshold for imposing gang enhancements, apply retroactively to Ponce since his judgment was not yet final on the amendments' operative date. (*In re Estrada* (1965) 63 Cal.2d 740, 745 [absent evidence to the contrary, courts presume legislation imposing ameliorative changes to criminal law apply to all nonfinal judgments]; *Lopez*, at p. 344.)

Because Ponce's trial took place long before the section 186.22 amendments, the jury was not asked to make these necessary factual determinations for a gang enhancement, and it did not do so. There were no jury instructions, and thus no jury finding, that the predicate offenses must have provided a common benefit to the gang that was more than reputational. The jury instructions lacked anything regarding the predicate offenses constituting "collective criminal activity" by the gang members. On this record and given the absence of any such jury findings, while we conclude there was sufficient evidence supporting the finding Ponce acted with the specific intent to promote the criminal activity of gang members, we cannot conclude beyond a reasonable doubt the jury would have found true the gang enhancement under the A.B. 333's amendments. (Cf. *People v. Merritt* (2017) 2 Cal.5th 819, 827 [harmless error standard for instructions

11

that omit elements of a crime].) "Where, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence." (*People v. Figueroa* (1993) 20 Cal.App.4th 65, 72.) The gang-related enhancement findings "must be vacated and the matter remanded to give the People the opportunity to prove the applicability of the enhancements under the amendments to section 186.22." (*People v. Lopez, supra*, 73 Cal.App.5th at p. 346.)

## III.

The parties also agree A.B. 518, legislation modifying section 654's preclusion of multiple punishments for a single act or indivisible course of conduct, requires remanding for resentencing. Previously, section 654 stated that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (Former § 654, subd. (a).) A.B. 518 eliminated the requirement that the court impose the longest potential term of imprisonment, instead conferring discretion to impose a punishment under any applicable provisions. (Stats. 2021, ch. 441, § 1 ["[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision"].) Ponce is entitled to benefits of this ameliorative sentencing legislation. (*In re Estrada, supra*, 63 Cal.2d at p. 745.) We have already vacated the gang enhancement findings based on A.B. 333; on remand, the trial court should exercise its discretion in light of A.B. 518.

12

Ponce identifies several clerical errors in the abstract of judgment that require correction.  Because we vacate Ponce's sentence and remand for full resentencing, we will not order any corrections.  Rather, the trial court will generate a new abstract of judgment that accurately reflects the pronounced judgment.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

## DISPOSITION

The gang enhancement allegation findings under section 186.22 and the sentence are vacated, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

_____

Rodríguez, J.

WE CONCUR:


_____

Fujisaki, Acting P. J.


_____

Petrou, J.

A155368